**Mark CLARK, Plaintiff-Appellant,**

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee.**

**No. 83–1555.**

United States Court of Appeals, Tenth Circuit.

April 9, 1984.

Claude V. Sumner, Midwest City, Okl., for plaintiff-appellant.

Ronald A. Lane, Chicago, Ill. (H.D. Binns, Jr., of Rainey, Ross, Rice & Binns,

Oklahoma City, Okl., with him on the briefs), for defendant-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Clark appeals from a decision of the district court for the Western District of Oklahoma granting the defendant-appellee's (Santa Fe) Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.

Clark, an American Indian, brought suit against Santa Fe alleging that the company had denied him his civil rights by violating 42 U.S.C. § 1981 and 42 U.S.C. § 2000e. Clark alleges, *inter alia*, that Santa Fe's promotion practices discriminated against Native Americans because less-qualified white employees were promoted above him solely on the basis of race.

In addition, Clark contends that his promotion *opportunities* were hindered by Santa Fe's discriminatory treatment of him. This treatment took the form of "refusing to grant training, assignments, performance ratings and employment opportunities" to Clark, while granting similar opportunities to white employees. (R., Vol. I at 15). Clark also alleges generally that Santa Fe "failed to maintain a work environment free of racial discrimination" which has caused him "to suffer and endure humiliation and harassment." (R., Vol. I at 16).

The district court, in granting Santa Fe's Motion for Summary Judgment, noted that Clark was proceeding upon a theory that his minority status alone entitled him to preferential treatment. (R., Vol. I at 98). The court observed that, according to Clark's deposition, he did not establish that he was equally or better qualified than those who were promoted. (R., Vol. I at 98). When asked why he should have been promoted instead of other employees, Clark answered: "To give a Native American a chance to prove himself." (*Id.*, quoting R., Vol. II at 85). Although Clark in his deposition did state that he personally felt more qualified for particular jobs, he explained

that the basis for this belief was his Native American heritage. This ancestry, the court went on to note, was also the sole basis supporting Clark's other claims of discrimination against the company (e.g., harassment, unequal treatment, etc.).

Based upon the above findings, the court determined that Clark had no legally cognizable claim under 42 U.S.C. § 1981 or 42 U.S.C. § 2000e. Those statutes, noted the court, were designed to prevent discrimination, not to promote affirmative action. Clark, having made no showing that Santa Fe had acted with discriminatory intent in regard to his employment, did not present a prima facie case under either statute. Hence the court granted Santa Fe's Motion for Summary Judgment.

On appeal, Clark argues that he presented sufficient evidence to establish a prima facie case of discrimination and that the district court erred in granting summary judgment against him. In addition, he contends that he is entitled to relief for Santa Fe's retaliation against him for pursuing this claim.

I.

In reviewing a district court's grant of summary judgment we must view the case in the same manner as did that court. *See Western Casualty & Surety Co. v. National Union Fire Ins. Co.,* 677 F.2d 789, 791 n. 1 (10th Cir.1982); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1377 (10th Cir.1980). Thus, we must determine whether any genuine issue of material fact exists, and, if not, whether the substantive law was correctly applied. *See* Fed.R. Civ.P. 56(c); *Western Casualty, supra.* In so doing, we must view the record on summary judgment in the light most favorable to the party opposing the motion. 10 Wright, Miller and Kane, *Federal Practice and Procedure:* Civil 2d § 2716, at 643 (2d ed. 1983) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

We have reviewed the record and agree with the district court's conclusion that Clark presented insufficient evidence of

discrimination to survive a summary judgment motion.

■ In regard to Clark's claim that Santa Fe denied him various promotions on the basis of his race, we agree with the district court's conclusion that Clark has made no showing that he was equally or better qualified than those employees actually promoted. The Supreme Court has made it absolutely clear that a claimant must make such a showing in order to present a prima facie case of discrimination in a promotion or hiring context. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Clark's argument that he was qualified purely as a result of his Indian heritage is unsatisfactory. The Supreme Court has held that an employer has a duty only to refrain from discriminatory conduct, not to maximize opportunities for minorities. *Furnco Constr. Co. v. Waters,* 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978).

Clark's other grounds supporting his claim of discrimination seemingly derive from Santa Fe's general "disparate treatment" of him in the course of his employment. This contention was presented extremely poorly by Clark's counsel; nonetheless, we have reviewed the record in search of facts supportive of such a claim.

Clark, in his deposition, testified to numerous instances where Santa Fe treated him differently, allegedly because of his race. Among other things, he pointed out the following:

(a) When Clark transferred to Oklahoma City, the law of Oklahoma required that he complete within one year a criminal law course offered by the state in order to be certified as a peace officer. Santa Fe, however, failed to assign Clark to any such class until well after his first year in Oklahoma City. Similarly, Clark was not allowed to enroll in other seminar courses dealing with other subjects, while white employees with less seniority were sent to the courses.

(b) Clark was required by Santa Fe to adhere to certain procedural formalities that were not required of all the white employees. In addition, Clark was "interrogated" and "investigated" about private matters.

(c) Clark's job performance evaluation was lower than many of his white co-employees, even though he claimed to do a better job than they did. In addition, this evaluation was left in public view on a supervisor's desk, unlike white employees' evaluations.

(d) Clark received unwarranted letters of discipline; white employees received no such disciplinary letters even though, according to Clark, they deserved such letters.

(e) Clark was "spied on" by his supervisor while trying to do his job; white employees were never subjected to such treatment.

(f) Clark's hours were changed so that he sometimes had to work at undesirable times.

A plaintiff in a Title VII case has the burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine, supra* 450 U.S. at 253, 101 S.Ct. at 1093. The proof necessary to make such a showing will necessarily vary with different factual situations. *McDonnell Douglas v. Green, supra* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. In general, however, the plaintiff carries the initial burden of presenting sufficient evidence of actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act. *Furnco Constr. Corp. v. Waters, supra* 438 U.S. at 576, 98 S.Ct. at 2949.

■ A prima facie case of racial discrimination in employment may be proved under a theory of disparate treatment. *Id.* at 582, 98 S.Ct. at 2952; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct.

1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Williams v. Colorado Springs, Colo. Sch. Dist.*, 641 F.2d 835, 839 (10th Cir.1981). Under such a theory, the plaintiff must show that he or she was treated in a manner which "but for race would have been different." *City of Los Angeles Dept. of Water v. Manhart*, 435 U.S. 702, 711, 98 S.Ct. 1370, 1377, 55 L.Ed.2d 657 (1978); *Bryant v. International Schools Services, Inc.*, 675 F.2d 562, 575 (3rd Cir.1982). Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. *International Brotherhood of Teamsters v. United States, supra.*

■ In the present case, Clark's evidence of disparate treatment consisted primarily of his own statements that he was not treated as well as white employees. We note, however, that the federal discrimination laws do not require employers to treat all employees equally; rather, they prohibit employers from meting out unequal treatment *based upon race*. Hence, it must again be stressed that a plaintiff suing under Title VII or section 1981 must produce evidence of discriminatory *intent* or *motive* in order to establish a prima facie case of discriminatory disparate treatment.

■ We have reviewed the record in search of competent evidence of such intent. We have found none. In our view, the only evidence in this regard consisted of Clark's statement that a Santa Fe supervisor had once asked another American Indian employee in 1975 if he minded being called a "blanket ass." In addition, an unofficial Santa Fe employee newsletter described Clark's solution of a particular

theft in the following terms: "How's that for the tracking ability of an Indian?"

We will not infer the requisite discriminatory intent from Santa Fe's alleged unequal treatment of Clark. Clark cites no cases where such an intent was inferred by a court, and we are not aware of any instances where this has been done.[1] We can conceive of situations where such an inference could be warranted owing to particularly egregious treatment, but Clark's case does not fall into that category.

David Reynolds, one of Clark's supervisors at Santa Fe, in his deposition gave plausible explanations for several of the instances of unequal treatment. For example, Reynolds stated that the criminal law courses required for certification in Oklahoma were not held frequently or regularly, and that Santa Fe tried to get everyone to a course within a year, but that this was not always possible. (R., Vol. IV at 36–37). Reynolds himself was unable to meet a similar requirement in Arizona within a required one-year period; he stated that his job, or anyone else's, was never in jeopardy due to this type of failure. (R., Vol. IV at 34–38). Reynolds also explained generally why Clark had been "reprimanded," "spied upon," and required to follow formal procedures. (R., Vol. IV at 49, 53, 56, 59–61). These explanations related not to race, but to Clark's character as an employee.

It is clear from the record that white employees were denied opportunities to take various training courses. The courses were limited in numbers; not everyone could attend. (R., Vol. II, Defendant's Exhibit 5). It is also clear that white employees were given low performance evaluations, were reprimanded on occasions, and

---

**1.** *Muller v. United States Steel Corporation*, 509 F.2d 923 (10th Cir.1975) is not such a case. In *Muller*, we noted that the vagueness of United States Steel's promotion criteria lent themselves to discrimination in promotion. The discriminatory impact of those policies was proven in *Muller* with statistics. Hence, *Muller* arose under a "disparate impact" theory, rather than a "disparate treatment" theory. As we have noted, discriminatory intent is not a required element of proof in disparate impact cases, but is required proof in disparate treatment cases.

*Williams v. Colorado Springs, Colo. School Dist.*, 641 F.2d 835, 839 (10th Cir.1981). Disparate impact analysis is applied to claims involving employment practices that are facially neutral, but that in fact fall more harshly on one group than another. *Id.* Under such circumstances, the discriminatory consequences of the employment practice are prohibited, regardless of the employer's intent. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

were forced to work at undesirable hours. (R., Vol. II at 77, 75).

It should also be pointed out that Clark has at all times retained his position with Santa Fe. According to Reynolds, Clark has never been formally disciplined by Santa Fe, and Clark has never been in danger of being considered unqualified for promotions at Santa Fe. (R., Vol. IV at 124–25).

Based upon all of the above, we hold that Clark presented insufficient evidence of discriminatory intent on the part of Santa Fe. We, therefore, conclude that Clark failed to present a prima facie case of discriminatory disparate treatment. Accordingly, we hold that the district court acted properly in granting Santa Fe's Motion for Summary Judgment.

## II.

■ For the first time in this proceeding, Clark, in his appellate brief, raises the contention that Santa Fe retaliated against him for pursuing this litigation. We need only note that this allegation was neither pleaded, nor raised before the trial court at any time. Ordinarily, we will not consider matters on appeal that were not raised in the trial court. *Nulf v. International Paper Co.*, 656 F.2d 553, 559 (10th Cir.1981).

AFFIRMED.