Wilma L. SCHWENKE, Plaintiff,

v.

SKAGGS ALPHA BETA,
INC., Defendant.

Civ. No. C85–1268G.

United States District Court,
D. Utah, C.D.

Oct. 24, 1986.

A. Paul Schwenke and Bruce J. Udall, Salt Lake City, Utah, for plaintiff.

David R. Money, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on August 28, 1986, on defendant's Motion for Partial Summary Judgment, Motion to Dismiss, and Motion to Strike Plaintiff's Demand for Jury Trial, Prayer for Compensatory Damages and Prayer for Attorney's Fees; and plaintiff's Motion for Partial Summary Judgment. Defendant was represented by David R. Money, and plaintiff was represented by A. Paul Schwenke and Bruce J. Udall. Both parties briefed the matters and presented oral argument, after which the court took the matter under advisement. The court now being fully advised enters its Memorandum Decision and Order.

## FACTUAL BACKGROUND

Wilma L. Schwenke (hereinafter "plaintiff") brought this action against Skaggs Alpha Beta, Inc. (hereinafter "defendant") alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982) and violation of 42 U.S.C. § 1981 (1982). Plaintiff also asserts a pendent state law claim for breach of an oral contract. Plaintiff's claims arise out of her employment relationship with defendant and essentially involve plaintiff's allegation that but for her status as a member of the Polynesian race she would have been promoted to the position of supervisor of the sales audit department of defendant's corporate office. Plaintiff's Complaint outlines three separate occasions upon which allegedly she was denied the supervisor position because of her race. Plaintiff only seeks recovery regarding the third act of alleged discrimination, and thus her prior applications for the supervisor position are only relevant as evidence tending to establish discriminatory intent as to the third denial.[1]

---

1. In defendant's Motion for Partial Summary Judgment a ruling is sought that because the first two alleged acts of discrimination occurred more than 300 days before the plaintiff filed a charge with the Equal Employment Opportunity Commission and the Utah Anti-Discrimination Division no recovery can be made regarding those acts. See 42 U.S.C. § 2000e–5(e) (1982) ("charge[s] shall be filed by or on behalf of the person aggrieved within 300 days after the alleged unlawful employment practice occurred"); Alexander v. Gardner-Denver Co., 415 U.S. 36,

47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) (an administrative charge of discrimination is a prerequisite to the maintenance of a Title VII action on the subject matter of that charge). Defendant's motion is moot as to that point because at oral argument counsel for plaintiff made it clear that plaintiff was only seeking recovery regarding the third incident of alleged discrimination. Nevertheless, the first two acts of alleged discrimination are relevant for evidentiary purposes in considering the third act of

Plaintiff began her employ with defendant on August 7, 1978, as a sales audit clerk. In February of 1979 she was promoted to the position of "lead clerk" in the sales audit department. In May 1980 the position of supervisor of the sales audit department became available. Shortly before the then supervisor left, plaintiff expressed interest in the supervisor position to one of defendant's managers, but she was told that a replacement supervisor had already been selected. *Deposition of Wilma L. Schwenke,* Jan. 8, 1986 at 85 (hereinafter cited as "Plaintiff's Deposition"). The replacement supervisor, James Golden, at that time was serving as a staff accountant in the general accounting section of the accounting department. Defendant's manager used essentially five criteria in selecting Mr. Golden as the audit department supervisor: past work experience, educational level, performance on the job, ability to handle different and additional work, and stability with the company. *Deposition of Robert Stephen Rogozinski,* March 13, 1986 at 16 (hereinafter "Rogozinski Deposition"); *Deposition of Donald C. Kocherhans,* March 14, 1986 at 17, 22–23 (hereinafter "Kocherhans Deposition"). In evaluating Mr. Golden's qualifications based on the aforesaid criteria, defendant's manager determined that Mr. Golden's experience as a staff accountant in the general accounting section exposed him to a number of different functions and areas of accounting that were important. *Rogozinski Deposition* at 24–25. In addition, Mr. Golden's efforts toward an accounting degree were also considered to be a favorable factor. *Id.* at 26–27.

In May 1984 Mr. Golden was transferred to another position within the defendant's company, once again opening up the supervisor position. Despite a favorable recommendation from one of plaintiff's managers, Sally Huntsman was selected over plaintiff to supervise the sales audit department. Ms. Huntsman previously had served as a supervisor of filing clerks and at the time was a supervisor in the payroll division. Defendant's manager based the selection of Ms. Huntsman on general accounting background in all areas of accounting, supervisory skills, interpersonal skills and technical skills. *Deposition of Gary Crook,* March 13, 1986 at 10 (hereinafter "Crook Deposition").

On the second or third of January 1985, plaintiff was approached by an agent of the Fred Meyer Company who offered plaintiff a job as a supervisor of daily sales reports with a corresponding increase in pay. *Plaintiff's deposition* at 35–36, 38. Plaintiff accepted the offer but expressed to the agent that her acceptance was contingent upon conferring with the management at defendant's business to see if there was any chance she would be promoted to supervisor of the sales audit department. *Id.* at 41. Fred Meyer was apparently willing to wait while plaintiff made such a determination. *Id.* at 46. The next day, Friday, January 4, plaintiff gave two weeks notice of her termination to her supervisor, Sally Huntsman. *Id.* at 99. In that same conversation Ms. Huntsman informed plaintiff that she was presently interviewing for a new position within the defendant company and that the supervisor position could become immediately available. *Id.* at 100. On Monday, January 7,[2] Ms. Huntsman was selected to fill the position for which she had interviewed, thus once again opening up the supervisor position. *Id.* at 100. The following Monday, January 14, plaintiff informed David Walters, who was in charge of selecting Ms. Huntsman's replacement, that she was interested in the supervisor position and that she would stay with the defendant company if she was offered the promotion. *Id.* at 102, 109. At that time, Mr. Walters was aware that

alleged discrimination. *See James v. Kid Broadcasting Corp.,* 559 F.Supp. 1153, 1155 (D.C.Idaho 1983).

**2.** At this point in plaintiff's deposition, a 1986 calendar was used to assist plaintiff's testimony.

Accordingly, dates testified to do not correspond to the proper day of the week on a 1985 calendar. Because the plaintiff's testimony was related in days of the week it was a simple task to adjust the dates and the court has done so.

plaintiff had given her two weeks notice and that Friday, January 18, was to be her last day. *Id.* at 109–10. Mr. Walters told plaintiff that he was going out of town the following week and as a result he would be unable to make a decision regarding the supervisor position until after his return. *Id.* at 107. Nevertheless, Mr. Walters stated that he could consider plaintiff for the position. *Id.* Plaintiff then decided, based on Mr. Walters' "general attitude," that she didn't have a chance for the supervisor position and consequently called Fred Meyer and gave her unequivocal acceptance on that same day. *Id.* at 123, 54.

On January 28, Mr. Walters returned from out of town and began the process of selecting a supervisor for the sales audit department. In making that decision Mr. Walters used four criteria: past performance, education, recommendations and an interview. *Deposition of David Walters,* March 13, 1986 at 21. Mr. Walters stated that plaintiff was considered along with a number of other candidates from within defendant company, although he admits that plaintiff was not evaluated in the same way as the other candidates because she was no longer with the company. *Id.* at 40. He stated: "We first look in-house to try and promote from within and if we don't have a qualified person at the time, then we very frequently look to the outside." *Id.* As a result "[p]laintiff was a part of the pool, so to speak, at the onset, because of her conversations before she left. But because of the qualifications of other individuals that were in-house, it narrowed down to the decision between those that were employees." *Id.* At the conclusion of the selection process Roy Baron was selected based upon a favorable performance review, recommendation, interview and education in that he had a bachelor's degree in accounting. *Id.* at 31–32. Plaintiff also had a favorable performance review and favorable recommendations. Plaintiff was not granted an interview "because she had already left the company." *Id.* at 31.

## ANALYSIS

### I. *Defendant's Motion for Partial Summary Judgment*

#### A. *Employment Discrimination: Title VII*

##### 1. *Legal Standards*

Defendant contends that the record demonstrates that plaintiff could offer no competent evidence at trial to support her claim of intentional discrimination with regard to not receiving the supervisor position in January 1985. The court recognizes that "[w]here different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment." *Brown v. Parker-Hannifin Corp.,* 746 F.2d 1407, 1411 (10th Cir.1984). Even if it appears that the moving party is more likely to prevail at trial, the court's role is not to weigh the evidence or to decide factual issues, but rather to resolve all reasonable doubts about the presence of material facts against the movant. *Id.* at 1411–12.

█ In applying the aforesaid summary judgment standard, this court looks to the widely accepted allocation of burdens established by the Supreme Court for cases of employment discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff has the burden to establish a prima facie case of disparate treatment: "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but it was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). If the plaintiff satisfies that burden, the burden of production then shifts to the defendant to "rebut [the] inference of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* at 254, 101 S.Ct. at 1094. Defendant must raise a genuine issue of fact as to whether

there was intentional discrimination against plaintiff. *Id.* at 254–55, 101 S.Ct. at 1094. If defendant meets that burden of production, "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 255, 101 S.Ct. at 1094. The plaintiff then has the burden to demonstrate that the defendant's proferred reason was pretextual, i.e., not the true reason. In other words, the plaintiff must meet her ultimate burden of proving that she was the victim of intentional discrimination. Plaintiff may accomplish that by: (1) *"persuading the court that a discriminatory reason more likely motivated the employer"*; or by (2) *"indirectly showing that the employer's proferred explanation is unworthy of credence." Id.* at 256, 101 S.Ct. at 1095 (emphasis added).

■ For purposes of establishing a basis for summary judgment, defendant must establish that there are no material issues of fact and that it is entitled to judgment as a matter of law. This must be done in one of two ways. The first is to demonstrate that plaintiff cannot establish a prima facie case at trial. The second is to demonstrate that plaintiff cannot carry the ultimate burden at trial of proving intentional discrimination, assuming that a prima facie case has been established and that legitimate nondiscriminatory reasons have been presented so as to shift the burden back to plaintiff.

### 2. *Prima Facie Case*

The Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), described an appropriate model for plaintiff to follow in establishing a prima facie case of disparate treatment.[3] Plaintiff is required to show:

(i) that [she] belongs to a racial minority; (ii) that [she] applied and was qualified for a job which the employer was seeking applicants; (iii) that, despite [her] qualifications, [she] was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824. In viewing the facts in the light most favorable to plaintiff in connection with defendant's motion for summary judgment, it is apparent that all of the necessary elements to establish a prima facie case are met.[4]

### 3. *Defendant's Burden*

Defendant offered evidence, unrebutted by plaintiff, that it had a policy of looking within the company for supervisors before it reached outside for qualified personnel. In addition, the facts offered by defendant establish that the employee who received the supervisor position was in fact qualified. He had favorable recommendations, a favorable interview, favorable perform-

---

**3.** The Supreme Court recognized in *McDonnell Douglas* and subsequent cases that this particular evidentiary model is not necessarily determinative in every employment discrimination case. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981).

**4.** Defendant asserts in its Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment that there is a genuine dispute as to whether plaintiff applied for each promotional opportunity, whether plaintiff was in fact qualified, and whether plaintiff is a member of a group protected by the Civil Rights Act. *Id.* at 13–16. Since defendant acknowledges that there is a dispute as to these issues, it is inappropriate for the court to resolve that dispute in defendant's favor for purposes of its Motion for Partial Summary Judgment. In any event, defendant further urges that the facts in

this case do not justify a presumption of intentional discrimination, relying on the case of *Clark v. Atchison, Topeka and Santa Fe Ry. Co.,* 731 F.2d 698 (10th Cir.1984) wherein the court said: "[I]t must ... be stressed that a plaintiff suing under Title VII or section 1981 must produce evidence of discriminatory *intent* or *motive* in order to establish a prima facie case of discriminatory-disparate treatment." *Id.* at 702. In *Clark,* however, plaintiff had not established all of the elements of a prima facie case. Defendant's basic argument is that the mechanical establishment of the four said criteria will not give rise to an inference of intentional discrimination in every case. However, the court need not resolve that issue because in this case the court regards the presence of those four elements to establish an inference of intentional discrimination.

ance and a bachelor's degree in accounting. The aforesaid constitutes a legitimate, non-discriminatory rationale upon which to base the employment decision. Accordingly, on the record the inference of discrimination created by plaintiff's prima facie case is rebutted, shifting the burden to plaintiff.[5]

### 4. Plaintiff's Burden

The final issue for resolution is whether plaintiff can demonstrate at trial that the defendant's proffered reasons for not promoting plaintiff were mere pretexts for discrimination. In looking at the factual allegations and resolving all doubts in favor of plaintiff, this court concludes that the plaintiff has failed to establish the in-

ference that defendant acted with an intent to discriminate based on plaintiff's race.

### (a) Appointment of James Golden

█ Focusing first on the promotion of James Golden as supervisor of the sales audit department in May of 1980, plaintiff alleges that the criteria of work experience, education and stability were mere pretexts for a discriminatory purpose. A review of these claims reveals that such are merely conclusory and unsubstantiated allegations.[6] Such unsubstantiated claims do not provide a basis to avoid summary judgment. *See Branson v. Price River Coal Co.*, 627 F.Supp. 1324, 1332 (D.Utah 1986) (quoting *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir.1983)).

---

5. Plaintiff in her deposition admits that on January 4, 1985, she accepted a position as supervisor of the daily sales reports at the Fred Meyer Company, contingent upon having a short time to determine her chances of advancement at defendant's corporate office. It is undisputed that on January 4 plaintiff gave two weeks notice to defendant. In addition, there is no dispute regarding the fact that plaintiff unequivocally accepted the offer by Fred Meyer on January 14. On Friday, January 18, plaintiff worked her last day for defendant and the following Monday, January 21, she began her new job at Fred Meyer. However, because of the busy season and a business trip by defendant's manager, it wasn't until January 28 that the process began for choosing a supervisor for defendant's sales audit department. In *Nulf v. International Paper Co.*, 656 F.2d 553 (10th Cir.1981) the court recognized that the "[p]laintiff herself, provided a legitimate, nondiscriminatory rationale for her discharge: her refusal to perform her assigned duties." *Id.* at 559. The plaintiff in this case has likewise herself provided a legitimate reason for her not being promoted: acceptance of a supervisory position with another company when there were other qualified candidates within defendant's company.

6. As to the matter of *work experience,* plaintiff asserts that as a lead clerk in the audit department she had supervisory responsibility over an average of sixteen audit clerks compared with Mr. Golden's supervisory experience over one subordinate. Defendant denies that the position of lead clerk involves any supervisory responsibilities. Mr. Golden had been a staff accountant serving in a number of different accounting functions within the accounting department. On the other hand, plaintiff's experience was isolated to the sales audit department. Plaintiff's allegation that defendant misinterpreted

the supervisory experience of the two does not demonstrate a pretext for discrimination.

Plaintiff alleges that *education* was a pretext for discrimination because defendant was negligent in ascertaining whether Mr. Golden had a degree or was making satisfactory progress towards a degree. It appears that in 1978 Mr. Golden enrolled at Westminister College on a part time basis with the intent of obtaining a bachelor's degree in accounting. As of March 1986 Mr. Golden was enrolled in classes at the college but had not yet obtained a degree. *Deposition of James Golden,* March 13, 1986 at 4–5. Manifestly, plaintiff's allegation regarding education does not create a pretext for discrimination. The fact that Mr. Golden decided to work full time and attend classes at night thereby taking a considerable amount of time to obtain a degree nevertheless would be beneficial to managing an accounting department and thus would be an appropriate criterion for considering the qualifications of applicants.

Plaintiff alleges also that *stability* was a pretextual justification because defendant assumed, without adequate inquiry, that plaintiff would not remain in the geographical area. Plaintiff's allegation in this regard is mere speculation. It appears that defendant's manager weighed the stability factor in favor of Mr. Golden because plaintiff had previously stated to the manager "that her husband was going to law school at BYU, which she stated to me, and that upon graduation they did not know where they would be going." *Kocherhans Deposition* at 34–35. Plaintiff does not deny that she casually made such a representation but rather faults defendant for not making further inquiry during the selection process. Even if the court can agree that defendant would have been wise to inquire further, there is presented no pretext for discrimination.

## (b) *Appointment of Sally Huntsman*

Plaintiff's allegations regarding the appointment of Sally Huntsman to the supervisor position in May of 1984 are also lacking in substance. The record demonstrates that Ms. Huntsman was qualified based on general accounting background in all areas of accounting, supervisory skills, interpersonal skills, and technical skills. She had served as a supervisor of filing clerks and then as a supervisor in the payroll division. In addition, Ms. Huntsman is a member of a class protected by Title VII.[7]

■ Plaintiff's basis for alleging pretext as to this appointment is that one of defendant's managers stated that in addition to the criteria listed above he considered plaintiff "not tough enough or as much of a supervisor as she ought to be." The basis for that evaluation apparently was plaintiff's interaction with other audit clerks in her position as lead clerk. That evaluation was clearly within defendant's business judgment regarding desired management style. This court cannot substitute its judgment for the defendant regarding what business skills a particular job requires. *See Matthews v. Allis-Chalmers*, 614 F.Supp. 11, 15 (N.D.Ill.1984), *aff'd*, 769 F.2d 1215 (7th Cir.1985).

## (c) *Appointment of Roy Baron*

Plaintiff's final allegations of pretext involve the selection of Roy Baron in 1985 to succeed Sally Huntsman as the sales audit supervisor. Plaintiff alleges that defendant's criterion of education was pretext in that the two predecessors to Mr. Baron did not have accounting degrees, that the interview process was sham and pretext because plaintiff was not granted an interview, and that defendant's method for selection of supervisors in general was flawed because defendant does not have an affirmative action program or written policies calculated to hire a reasonable percentage of racial minorities.

■ Plaintiff's argument, that defendant's "requirement" of a bachelor's degree was pretext, is without support in the record and lacks substance.[8] This unsubstantiated allegation is a far cry from the high school education requirement unrelated to satisfactory job performance which was struck down in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ Plaintiff's allegation of failure of defendant to grant her an interview has superficial appeal. However, it is evident that defendant's primary justification for hiring Roy Baron, rather than plaintiff, was that he was an employee of the defendant while plaintiff was not. The record demonstrates that defendant had a policy of looking within the company for supervisors before looking elsewhere.

■ Plaintiff's allegations that defendant's method of selecting supervisors was calculated to discriminate against racial minorities are likewise without substance. The mere allegation that the percentage of racial minorities is too low does not create a presumption of pretext.[9] Likewise, the mere assertion that defendant failed to es-

---

7. Title VII provides:

   It shall be an unlawful employment practice for any employer—to sell or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, *sex*, or national origin.

   42 U.S.C. § 2000e–2(a)(1) (1982) (emphasis added).

8. A review of the record reveals that there is no evidence that defendant *required* a bachelor's degree as a qualification for the supervisor posi-

tion. It is apparent, however, that defendant considered an accounting education to be an asset for the supervisor of an accounting department.

9. Plaintiff asserts that less than 2 per cent of the management personnel at defendant's corporate office are of racial minority status. The court in viewing the facts most favorable to plaintiff recognizes that statistics can be helpful and relevant in a disparate treatment case. *See Beck v. Quicktrip Corp.*, 708 F.2d 532, 534 (10th Cir. 1983). However, a mere allegation, standing alone, does not raise a genuine issue of material fact as to pretext.

tablish and implement an affirmative action program does not establish discriminatory intent.[10] Finally, the lack of written policies for choosing supervisors shows no discriminatory intent so long as objective criteria can be shown to have been utilized.[11]

For the foregoing reasons, the court finds as a matter of law that plaintiff has not demonstrated that a discriminatory reason more likely motivated defendant in failing to promote plaintiff to the position of supervisor of the sales audit department of defendant's corporate office in January of 1985 or that defendant's proffered explanation is unworthy of credence. Defendant's Motion for Partial Summary Judgment is granted with regard to plaintiff's Title VII claim.

### B. *Employment Discrimination: Section 1981*

■ Plaintiff's claim of discrimination under 42 U.S.C. § 1981 (1982) is virtually identical to her Title VII claim, with only the jurisdictional allegation being changed. Section 1981, like the Equal Protection Clause, can be violated only by a clear showing of purposeful discrimination. *See General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d

968, 971 (10th Cir.1979); *Whatley v. Skaggs Companies, Inc.*, 502 F.Supp. 370, 376 (D.Colo.1980).

■ For the reasons explained by the court in granting defendant's Motion for Summary Judgment regarding plaintiff's Title VII claim, the court finds as a matter of law that plaintiff is unable to demonstrate purposeful discrimination under Section 1981. Accordingly, defendant's Motion for Partial Summary Judgment is granted with regard to plaintiff's Section 1981 claim.

### C. *State Contract Claim*

■ Plaintiff alleges that defendant's manager, Gary Crook, acting as an agent for defendant, entered into an oral agreement with plaintiff. The substance of the alleged agreement was that Mr. Crook promised plaintiff in May 1984 that if she would help train Sally Huntsman to be the new supervisor of the audit sales department, and agree to cooperate in all respects with implementing Ms. Huntsman as supervisor, defendant would promise to promote plaintiff to fill the next available supervisory position. This state contract claim is based wholly upon pendent jurisdiction. The Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct.

---

**10.** Plaintiff asserts that defendant's failure to implement an affirmative action program supports an inference of pretext. The Tenth Circuit in *Clark v. Atchison, Topeka and Santa Fe Ry. Co.*, 731 F.2d 698 (10th Cir.1984), rejected this contention. In *Clark* the court upheld that trial court's granting of defendant's motion for summary judgment and determination that Title VII and Section 1981 "were designed to prevent discrimination, not to promote affirmative action. [Plaintiff], having made no showing that defendant acted with discriminatory intent in regard to his employment, did not present a prima facie case under either statute." *Id.* at 700. That is the case here as well.

**11.** Plaintiff argues that because defendant did not create written policies for choosing qualified supervisors there was necessarily pretext in making those decisions. However, so long as there were actual policies regarding qualifications it is not mandatory that such be written. *Cf. Connor v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir.1985) (unpublished standard meets clarity test if "capable of objective

evaluation"). In this case the record shows that a procedure was in place for finding qualified supervisors. Essentially, when an opening would arise the department head would notify the other department heads, who would in turn ask the personnel in their department if they are interested in the opening. Those personnel who were interested would become candidates. In addition, the record shows that defendant's managers used similar, although not identical criteria, in evaluating candidates. Robert Rogozinski in promoting James Golden looked at past work experience, educational level, performance on the job, ability to handle different and additional work, and stability with the company. Gary Crook in promoting Sally Huntsman looked at general background in terms of accounting, supervisory and interpersonal skills and technical skills. David Walters in promoting Roy Baron looked at past performance on the job, educational background, recommendations from supervisors and a personal interview.

1130, 1139, 16 L.Ed.2d 218 (1966), recognized that if a federal claim against a party is dismissed before trial, pendent state law claims should be dismissed as well. Based upon the court's dismissal of plaintiff's federal claims, the court exercises its discretion and hereby dismisses the state contract claim without prejudice. It appears that plaintiff could assert that claim in state court should she choose to do so.

Based on the foregoing analysis, defendant's Motion for Partial Summary Judgment is granted and plaintiff's Motion for Partial Summary Judgment is denied. Other motions by the parties are moot. This Memorandum Decision and Order will suffice as the court's final action on these motions; no further order need be prepared by counsel.

IT IS SO ORDERED.