January 13, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1952

MICHAEL PAGANO,

Plaintiff, Appellant,

v.

ANTHONY M. FRANK, POSTMASTER GENERAL, ETC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Robert E. Keeton, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Cyr, Circuit Judge.

Norman Jackman, with whom Martha M. Wishart and Jackman &

Roth were on brief, for appellant.

David G. Karro, Attorney, Office of Labor Law, U. S. Postal

Service, with whom A. John Pappalardo, United States Attorney,

and Annette Forde, Assistant United States Attorney, were on

brief, for appellee.

SELYA, Circuit Judge. The United States Postal Service
SELYA, Circuit Judge.

prides itself on surmounting obstacles that nature places in its

path.1 In this bitterly contested case, plaintiff-appellant

Michael Pagano, a veteran postal worker, complains that, whatever

success the Service may have encountered in its struggle with the

elements, it has been unable to surmount a man-made obstacle:

prejudice in the workplace. The district court ruled in favor of

the defendant. Finding appellant's arguments to be unpersuasive,

we affirm.

I. BACKGROUND

The Lynnfield Post Office hired appellant as a part-

time mail carrier in 1973. He became a full-time employee two

years later, working primarily as a clerk at a branch office. In

1983,

appellant became a dispatcher at the main post office under the

direct supervision of James Walsh. Walsh and Pagano did not

enjoy a cordial working relationship a situation that perhaps

stemmed from the latter's propensity for unauthorized absences.

When Walsh was promoted to postmaster in mid-1984, Paul

Hentschel became Pagano's supervisor. On December 2, 1984,

Hentschel sent appellant an admonitory letter regarding frequent

tardiness and excessive use of sick leave. A second warning

letter, issued exactly one year later, cited continuing instances

1An inscription on the exterior of the main New York City
post office, often thought to be the Postal Service's motto,
reads: "Neither snow, nor rain, nor heat, nor gloom of night
stays these couriers from their appointed rounds." (adapted from
VIII Herodotus, Histories 98).

2

of unpunctuality and sick leave abuses during a two-month period

ending December 2, 1985.

Notwithstanding these admonitions, appellant persisted

in his moratory ways. Hentschel suspended him for seven days in

January (later reduced to five) and fourteen days in March (later

reduced to seven). Seeing no improvement, Hentschel issued a so-

called "notice of removal" on July 15, 1986 (later withdrawn),

and reissued it on October 22, 1986. During the ensuing

grievance proceedings, Walsh overrode Hentschel's action and

authorized a "last chance" agreement. Although the agreement

contained a promise that appellant would report for work

regularly and punctually, this covenant was honored mainly in the

breach: appellant was absent or late nineteen times during the

four-month period ending March 23, 1987. Hentschel discharged

appellant in May of that year, citing his "lack of dependability

in reporting and not being available for duty."

Three months after his termination, appellant filed a

formal administrative complaint with the Postal Service's equal

employment opportunity office, alleging that he was dismissed

because of his employer's animus against persons of Italian

origin.2 For the next three years, appellant vigorously pursued

2Appellant originally claimed that a second discriminatory
animus, arising out of his role in the investigation of a sexual
harassment complaint, contributed to his difficulties. He has,
however, abandoned this theory on appeal. Accordingly, we pass
over it. See United States v. Slade, F.2d , n.3 (1st

Cir. 1992) [No. 92-1176, slip op. at 6 n.3] (reiterating the
general rule that "theories neither briefed nor argued on appeal
are deemed to have been waived").

3

his case on the administrative level. Receiving no satisfaction,

he brought suit against the Postmaster General in the United

States District Court for the District of Massachusetts.

Appellant docketed his complaint in the district court

on August 7, 1990. On February 19, 1992, a magistrate judge

denied his motion for leave to file an amended complaint.

Several months thereafter, the district court granted the

defendant's motion for summary judgment. This appeal ensued.

II. THE NEED TO OBJECT TO A MAGISTRATE'S ORDER

As a preliminary matter, appellant contends that the

district court erred in denying his motion to add counts alleging

wrongful discharge and breach of contract. The facts are as

follows. Appellant's motion to amend his complaint was filed on

January 10, 1992. The district judge referred the motion to a

magistrate judge who denied it on grounds of futility, ruling

that the additional claims were both preempted by Title VII and

that, moreover, the wrongful discharge claim failed to comport

with the Federal Tort Claims Act. Appellant took no further

action. Because appellant failed to object to the magistrate's

order within the prescribed ten-day period, see Fed. R. Civ. P.

72(a), we cannot consider this assignment of error.3

3We analyze this point under Fed. R. Civ. P. 72(a) partially
because appellant, in post-argument briefing before us,
explicitly invited that characterization. However, even if we
viewed the magistrate's denial of the motion to amend as
implicating 28 U.S.C. 636(b)(1)(B) and Fed. R. Civ. P. 72(b)
rather than 28 U.S.C. 636(b)(1)(A) and Rule 72(a), the result
that we reach would not be affected. See Park Motor Mart, Inc.

v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980) (holding

that, in respect to a magistrate's recommended disposition under

4

Under ordinary circumstances a motion to amend a

complaint is "a pretrial matter not dispositive of a claim or

defense of a party" within the purview of Fed. R. Civ. P. 72(a).

See Walker v. Union Carbide Corp., 630 F. Supp. 275, 277 (D. Me.

1986); see also 28 U.S.C. 636(b)(1)(A) (providing that a

district judge "may designate a magistrate to hear and determine

any pretrial matter," with certain enumerated exceptions not

relevant here). A party displeased by a magistrate's order on a

nondispositive motion must serve and file objections to the order

within ten days. See Fed. R. Civ. P. 72(a); see generally 28

U.S.C. 636(d) (congressional grant of rulemaking power). If

the aggrieved party preserves his rights in this fashion, the

district judge can set aside the magistrate's ruling if he finds

it to be "clearly erroneous or contrary to law." 28 U.S.C.

636(b)(1)(A); Fed. R. Civ. P. 72(a). If, however, the aggrieved

party sits idly by and fails to object within the prescribed

period, he "may not thereafter assign as error a defect in the

magistrate's order . . . ." Id.; see also Rule 2(b), Rules for

U.S. Magistrates in the United States District Court for the

District of Massachusetts (implementing 28 U.S.C.

636(b)(1)(A), (d) and Civil Rule 72 (a)).

In this instance, Pagano did not object to the

section 636(b)(1)(B), "a party 'may' file objections within ten
days or he may not, as he chooses, but he 'shall' do so if he
wishes further consideration"); accord Davet v. Maccarone, 973

F.2d 22, 30-31 (1st Cir. 1992); Templeman v. Chris Craft Corp.,

770 F.2d 245, 247 (1st Cir.), cert. denied, 474 U.S. 1021 (1985);

Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983).

5

magistrate's denial of the motion to amend. That ends the

matter. Congress granted the courts of appeals jurisdiction to

hear appeals "from all final decisions of the district courts of

the United States." 28 U.S.C. 1291. We have held that for a

magistrate's decision to be "final" within the meaning of the

statute it "must have been reviewed by the district court, which

retains ultimate decision-making power." United States v. Ecker,

923 F.2d 7, 8 (1st Cir. 1991) (quoting Siers v. Morrash, 700 F.2d

113, 115 (3d Cir. 1983)).4 In other words, when, as now, a

litigant could have tested a magistrate's ruling by bringing it

before the district judge, but failed to do so within the

allotted ten-day period, he cannot later leapfrog the trial court

and appeal the ruling directly to the court of appeals. See

Unauthorized Practice of Law Comm. v. Gordon, F.2d ,

(1st Cir. 1992) (per curiam) [No.92-1710, slip op. at 7-8];

McKeever v. Block, 932 F.2d 795, 799 (9th Cir. 1991); Singletary

v. B.R.X., Inc., 828 F.2d 1135, 1137 (5th Cir. 1987); Siers, 700

F.2d at 116; see also Ecker, 923 F.2d at 9 (holding that the

court of appeals cannot undertake direct review of a magistrate's

order on a nondispositive pretrial motion in a criminal case);

United States v. Renfro, 620 F.2d 497, 500 (5th Cir.) (same),

cert. denied, 449 U.S. 921 (1980).

Because appellant took no steps to have the district

4Of course, when magistrates sit as de facto district judges

by consent of the litigants under 28 U.S.C. 636(c), they can
enter final, appealable judgments. See 28 U.S.C. 636(c)(3).

However, section 636(c) has no applicability in the instant case.

6

judge review the magistrate's denial of the motion to amend, he

is precluded from contesting the merits of that order in the

present proceeding. See Rittenhouse v. Mabry, 832 F.2d 1380,

1387 (5th Cir. 1987) (refusing to entertain a plaintiff's

challenge to a magistrate's denial of his motion to amend his

complaint because "no appeal therefrom to the district court was

ever taken or attempted and the district court did not in any way

review or confirm th[e] order").

III. THE PROPRIETY OF SUMMARY JUDGMENT

We divide our examination of the summary judgment

entered below into two segments. We begin by outlining the Rule

56 standard and then proceed to the underlying Title VII claim.

A. The Summary Judgment Standard.

Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). Where, as in this case, the defendant has invoked Rule 56

and asserted a lack of supporting evidence, the plaintiff must

establish the existence of a triable issue which is both genuine

and material to his claim. See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48 (1986). "In this context, 'genuine' means

that the evidence about the fact is such that a reasonable jury

could resolve the point in favor of the nonmoving party [and]

'material' means that the fact is one that might affect the

7

outcome of the suit under the governing law." United States v.

One Parcel of Real Property, Etc. (Great Harbor Neck, New

Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citations and

internal quotation marks omitted).

On issues where the nonmovant bears the ultimate burden

of proof at trial, he may not defeat a motion for summary

judgment by relying upon evidence that is "merely colorable" or

"not significantly probative." Anderson, 477 U.S. at 249-50. To

the contrary, the nonmovant must "present definite, competent

evidence to rebut the motion." Mesnick v. General Elec. Co., 950

F.2d 816, 822 (1st Cir. 1991), cert. denied, 112 S. Ct. 2965

(1992). Even when elusive concepts like motive or intent are in

play, "summary judgment may be appropriate if the non-moving

party rests merely upon conclusory allegations, improbable

inferences, and unsupported speculation." Medina-Munoz v. R.J.

Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

We afford plenary review to a district court's grant of

summary judgment. In the course thereof, we must read the record

in the light most amicable to the party contesting summary

judgment, indulging all reasonable inferences in that party's

favor. See, e.g., Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st

Cir. 1990).

B. The Title VII Claim.

Title VII renders it unlawful for an employer to

"discharge any individual . . . because of such individual's

race, color, religion, sex, or national origin . . . ." 42

8

U.S.C. 2000e-2(a)(1). To prevail on a Title VII claim, a

plaintiff must prove that the defendant discriminated against him

for a proscribed reason. See Cumpiano v. Banco Santander Puerto

Rico, 902 F.2d 148, 153 (1st Cir. 1990). Because appellant

produced no direct evidence of discriminatory intent, we must

initially analyze his claim under the burden-shifting framework

of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05

(1973).5

McDonnell Douglas requires, first, that the claimant

state a prima facie case. This showing transfers the burden of

production, requiring the employer to articulate (but not

necessarily prove) some legitimate, nondiscriminatory reason

justifying the adverse employment action. Cumpiano, 902 F.2d at

153. Satisfying this burden of production effectively dissolves

the inference of discrimination arising from the plaintiff's

prima facie case.6 See White v. Vathally, 732 F.2d 1037, 1040

(1st

5In general, the McDonnell Douglas model operates in the

same way for Title VII cases as for cases brought under the
federal Age Discrimination in Employment Act (ADEA), 29 U.S.C.
621-634 (1988). See Villanueva v. Wellesley College, 930 F.2d

124, 127 n.2 (1st Cir.) cert. denied, 112 S. Ct. 181 (1991); Loeb

v. Textron, Inc., 600 F.2d 1003, 1015 (1st Cir. 1979). Hence, we

cite interchangeably to Title VII and ADEA decisions in the
succedent analysis.

6Even though the McDonnell Douglas inference vanishes, the

evidence submitted in support of the prima facie case remains
under consideration. See Mesnick, 950 F.2d at 825 n.6

(explaining that, although the burden-shifting framework becomes
inconsequential at this point, the district court, faced with a
Rule 56 motion, "must still examine the evidence that the parties
adduced in proceeding under the framework").

9

Cir.), cert. denied, 469 U.S. 933 (1984). Once the parties reach

this stage, therefore, the plaintiff, if he is to defeat a

properly documented motion for summary judgment, "must offer some

minimally sufficient evidence, direct or indirect, both of

pretext and of the employer's discriminatory animus." Mesnick,

950 F.2d at 825; accord Villanueva v. Wellesley College, 930 F.2d

124, 127-28 (1st Cir.), cert. denied, 112 S. Ct. 181 (1991);

Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st Cir.

1988).

In this case, the district court apparently assumed

that appellant stated a prima facie case7 and that the employer

articulated a facially valid, nondiscriminatory reason (chronic

absenteeism and tardiness) for the dismissal. From that starting

point, the court ruled against appellant on two bases. First,

the court determined that appellant failed to submit evidence of

pretext. Second, the court found that "there is no evidence in

the record . . . that would justify even a circumstantial

inference that plaintiff was dismissed because of his Italian

heritage." Either conclusion would have warranted brevis

disposition. Having scrutinized the record, we are persuaded

that both are supportable.

7In employment termination cases, a prima facie case may be
established by demonstrating that "(1) the plaintiff was within a
protected class; (2) she was qualified for, and adequately
performed, her job; (3) she was nevertheless dismissed; and (4)
after her departure, the employer sought someone of roughly
equivalent qualifications to perform substantially the same
work." Cumpiano, 902 F.2d at 153. Following the district

court's lead, we also assume arguendo that appellant stated a

prima facie case.

10

1. Pretext. Appellant's effort to establish pretext
1. Pretext.

takes an unexpected twist. The Postal Service's stated reason

for cashiering Pagano focused on his rotten attendance record and

unremitting lack of punctuality. Usually, a Title VII plaintiff

seeks to show pretext by attacking the factual premise on which

the employer's professed reason rests. Here, however, appellant

concedes the truth of the Service's factual predicate he was,

by his own admission, often absent and frequently late but says

that the proffered reason was nonetheless pretextual because the

employer's attendance policy was not applied to other, similarly

situated, non-Italian employees in the same way.

This uncommon claim hinges on appellant's attempt to

compare his work record and treatment with the work record and

treatment of one Patrick Rafferty, a co-employee of Irish

descent. In appellant's view, Rafferty committed equivalent sins

but received much milder punishment. The court below jettisoned

this claim, finding that Rafferty's case was not a fair congener.

We agree.

In contending that he and Rafferty were "similarly

situated," appellant limits his analysis to the number of times

the two men were late during a finite period. Yet, appellant had

a substantially longer and more varied history of attendance

problems than did Rafferty and appellant, unlike Rafferty, failed

to mend his ways following receipt of formal warnings. Appellant

also racked up many more violations of the Postal Service's

attendance policy than did Rafferty when items such as sick time,

11

absences without leave, and the like are taken into account.8

In short, the record shows beyond hope of contradiction

that the two men were not similarly situated vis-a-vis overall

attendance and that Rafferty, like Pagano, was disciplined for

provable infractions at a level corresponding to the infractions'

severity. In the absence of any other evidence that the Postal

Service applied the attendance rules unevenly, the district court

did not err in holding that there was no genuine issue of

material fact on the question of pretext.9 See Oliver v.

Digital Equip. Corp., 846 F.2d 103, 109 (1st Cir. 1988).

2. Discriminatory Animus. Appellant likewise failed
2. Discriminatory Animus.

to adduce any evidence tending to prove defendant's supposed

discriminatory intent. Appellant produced no evidence that

Hentschel, the official responsible for monitoring the attendance

policy and initiating disciplinary proceedings, harbored an

anti-Italian animus. Rather, he attempted to establish animus by

showing that Walsh, the Lynnfield postmaster, nursed a grudge

8For example, in the seventeen months prior to appellant's
dismissal, he was involved in fifty-three separate occurrences
that called the attendance rules into question. Rafferty was
involved in only fourteen such instances during the same period.

9Relatedly, appellant asserts that there is a fact dispute
about whether the Postal Service consistently recorded every
instance of employee lateness or absence. Even if such a
question exists, however, it is not material to this case.
Appellant adduced no proof that the Service either failed to
record transgressions based upon employees' national origin or
placed ersatz infractions on his work record. Indeed, his
evidence suggests that the Service may have been somewhat
charitable in not recording all violations of the attendance
rules. If this is so, appellant, as a habitual latecomer, likely
benefitted from the employer's laxity.

12

against persons of Italian descent. The sum total of appellant's

evidence consists of three statements attributed to Walsh. When

reacting to news that he had become appellant's immediate

superior, Walsh allegedly remarked, "Good, now we can fire you."

On another occasion, Walsh allegedly told a co-worker that he

hoped appellant would quit. Finally, upon hearing an employee of

Italian lineagecough, Walsh reputedly said, "I hope he chokes."

This evidence is manifestly insufficient to create a

trialworthy issue regarding the existence of a statutorily

proscribed animus. To be sure, the attributed remarks are

concededly coarse but there is nothing about them which

suggests to an objectively reasonable observer that they

constituted expressions of discrimination based on national

origin. Sporadic instances of rude behavior, without more, do

not comprise competent proof of nationality-based discrimination.

See, e.g., Mesnick, 950 F.2d at 826; Medina-Munoz, 896 F.2d at 9-

10; Robinson v. Montgomery Ward & Co., 823 F.2d 793, 797 (4th

Cir. 1987), cert. denied, 484 U.S. 1042 (1988); Clark v.

Atchison, Topeka & Santa Fe Ry. Co., 731 F.2d 698, 702 (10th Cir.

1984). We hold, therefore, that this smattering of offhand

comments, spread over a fourteen-year period, fails as a matter

of law to show anti-Italian animus.10

10In view of this ruling, we need not reach, and, thus, take
no view anent, the district court's alternative holding that
Walsh's comments, even if probative of ethnic hostility, were
inconsequential absent evidence that he had some input into, or
impact upon, Hentschel's decision to end appellant's employment.

13

IV. CONCLUSION
IV. CONCLUSION

We need go no further. We are without jurisdiction to

consider appellant's belated challenge to the magistrate's denial

of his motion to file an amended complaint. And, given the lack

of a triable issue of fact regarding either pretext or animus, we

conclude, without serious question, that the lower court

appropriately entered judgment in defendant's favor. See Oliver,

846 F.2d at 109 (holding that summary judgment is proper in a

Title VII case where plaintiff's opposition, at bottom, rests

solely upon "unsupported allegations and speculation").

Affirmed.

See, e.g., Medina-Munoz, 896 F.2d at 10 ("The biases of one who

neither makes nor influences the challenged personnel decision
are not probative in an employment discrimination case.").

14