The WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY, A Corporation, Defendant-Appellee.

No. 80–1174.

United States Court of Appeals, Tenth Circuit.

May 14, 1982.

Steven R. Smith, Wichita, Kan. (H. W. Fanning, Wichita, Kan., with him on the brief), of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff-appellant.

Rex G. Beasley of Fleeson, Gooing, Coulson & Kitch, Wichita, Kan., for defendant-appellee.

Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a dispute between two insurance companies over policy coverage. Pursuant to the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1976 & Supp. II 1978), Western Casualty & Surety Company (Western), a Kansas corporation, brought an action against National Union Fire Insurance Company (National), a Pennsylvania insurance company authorized to do business in Kansas. Western sought a

declaratory judgment that a policy of garage liability insurance issued by National to Davis-Moore Oldsmobile, Inc., provided primary liability coverage to Jeanette M. Kirk, who was involved in a collision with a motorcyclist while driving a vehicle owned by Davis-Moore Oldsmobile, Inc. Western and National filed a stipulation of facts with the trial court, and thereafter each asked, in effect, for summary judgment in its favor. The case was submitted on written briefs for final determination, the parties waiving oral argument. The trial court entered judgment in favor of National, the defendant, and Western, the plaintiff, now appeals.

From the stipulation of facts we learn the following: Jeannette M. Kirk owned a 1976 AMC Pacer and, prior to the date of the accident, had entered into a contract for automobile liability insurance with Western. A copy of this policy was attached to the stipulation of facts. Ms. Kirk took her AMC Pacer to Davis-Moore Oldsmobile, Inc., a Wichita, Kansas, automobile dealer, for routine servicing. While the Pacer was in the care and custody of Davis-Moore, it was damaged by one of Davis-Moore's employees. Ms. Kirk was advised that her car had been damaged and that it could not be returned to her for several days. She initially declined an offer by Davis-Moore to furnish her a substitute car. However, when it became apparent that the repairs would not be completed as quickly as anticipated, Davis-Moore again offered Ms. Kirk the use of one of its cars, and Ms. Kirk accepted this offer. When Ms. Kirk picked up the car from Davis-Moore, she and an employee of Davis-Moore signed a document entitled "Car Rental Agreement." A copy of this agreement was also attached to the stipulation of facts. At all times here relevant, National had in effect a policy of garage liability insurance which had been issued to Davis-Moore Oldsmobile, Inc. A copy of that insurance policy was also attached to the stipulation of facts. As indicated, the next day after she took possession of the substitute car from Davis-Moore, Ms. Kirk, while driving the vehicle owned by Davis-Moore, was involved in a collision with a motorcyclist, who later sued her in a state court for personal injury and property damage.

Western concedes that, under the temporary substitute automobile provision of its policy, Ms. Kirk was an insured when the automobile she was driving collided with the motorcycle. Western contends, however, that, under the "Other Insurance" provisions of the policy, its insurance "with respect to temporary substitute automobiles . . . shall be excess insurance over any other valid and collectible insurance." In this connection, Western argues that Ms. Kirk was also an insured of National's under the policy of garage liability insurance issued Davis-Moore by National, and that by virtue of the "Other Insurance" provision of its policy, Western is only the secondary insurer and National is the primary insurer.

National concedes that its policy with Davis-Moore does provide coverage for liability arising out of the use of any automobile owned by Davis-Moore "which was furnished for the use of any person." Notwithstanding, National asserts that Ms. Kirk is not an insured under its policy issued Davis-Moore because of a rental exclusion clause of the policy. That rental exclusion clause provides that the policy does not apply to bodily injury or property damage arising out of the use of an automobile owned by the named insured, Davis-Moore, "while rented to others by the named insured. . . ." National's position is that Davis-Moore "rented" the car in question to Ms. Kirk, and that, because of the rental exclusion clause, Ms. Kirk was not National's insured when she had the accident with the motorcyclist.

■ The trial court agreed with National and concluded that Davis-Moore "rented" the vehicle to Ms. Kirk, and that, by virtue of the rental exclusion clause in the National policy, Ms. Kirk was not National's insured at the time of the accident. We do not agree with the conclusion that the relationship between Davis-Moore and

Ms. Kirk was that of lessor-lessee.[1] Rather, in our view, the relationship between Davis-Moore and Ms. Kirk was that of a gratuitous bailor-bailee.

At the outset, the mere fact that the written agreement signed by Ms. Kirk and the employee of Davis-Moore was captioned a "Car Rental Agreement" is not dispositive of the question of whether Davis-Moore "rented" the car to Ms. Kirk. In ascertaining the true nature of the relationship between Ms. Kirk and Davis-Moore, we must look to the provisions in the signed agreement and not just the descriptive label carried at the top of the document. Moreover, the provisions of the agreement must themselves be considered in the light of the stipulated facts.

In the case of *Insurance Co. of North America v. Northwestern National Insurance Co.*, 371 F.Supp. 550, 554 n.5 (E.D. Mich.1973), aff'd, 494 F.2d 1192 (6th Cir. 1974), a federal district court considered the same argument advanced here by National and concluded that the fact that a writing was labelled a "Rental Contract" did not itself establish a rental relationship sufficient to trigger a rental exclusion clause in an insurance contract. That court held that the "Rental Contract" label which appeared on certain time slips was neither binding nor relevant "unless it is shown that the same meaning for the term was contemplated by the parties to the insurance contracts here in issue." In the instant case there has been no showing that the parties to the policy issued Davis-Moore by National intended that the rental exclusion provision in the policy would include the type of agreement here entered into by Ms. Kirk and Davis-Moore. We must go beyond labels and form and look at the substance of the agreement.

National's policy does not define the word "rent," nor has our attention been directed to any Kansas case law addressing the particular problem now before us.[2] In such circumstance, resort must be made to all resources available, including decisions of other federal and state courts, in an effort to determine how the Supreme Court of Kansas would probably resolve the present question. *Farmers Alliance Mutual Insurance Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980); *Julander v. Ford Motor Co.*, 488 F.2d 839, 844 (10th Cir. 1973).

The word "rent" implies a commercial transaction wherein the owner-lessor receives a valuable consideration from the lessee in exchange for the use of the former's chattel. Where the owner of an automobile, as an act of accommodation, allows another to use his vehicle without expectation of receiving anything of value in return, he is not "renting" his vehicle. In support of the foregoing, see, for example, *Carriers Insurance Co. v. American Home Assurance Co.*, 512 F.2d 360 (10th Cir. 1975); *Wells v. Allstate Insurance Company*, 327 F.Supp. 622 (D.S.C.1971).[3]

---

1. We note that in reviewing the order of summary judgment issued below this Court does not apply the clearly erroneous standard of Fed.R.Civ.P. 52, but instead views the case in the same manner as the trial court. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir. 1980); *Exnicious v. United States*, 563 F.2d 418, 423 n.9 (10th Cir. 1977). Thus, we must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains, and if not, whether the substantive law was correctly applied. Fed.R.Civ.P. 56. The issue of whether an agreement constituted a rental is a conclusion of law and not a material issue of fact. *See Insurance Co. of North America v. Northwestern National Insurance Co.*, 371 F.Supp. 550, 553 (E.D.Mich.1973), aff'd, 494 F.2d 1192 (6th Cir. 1974).

2. This Court, of course, is bound to apply the substantive law of the State of Kansas to the issues raised by the parties. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Farmers Alliance Mutual Insurance Co. v. Bakke*, 619 F.2d 885, 888 (10th Cir. 1980).

3. The holding that a rental contract for the lease of a vehicle contemplates a profit motivation has been adopted by several state courts. *See, e.g., Peterson v. Marlowe*, 264 N.W.2d 133, 136 (Minn.1977); *Christensen v. State Farm Mutual Automobile Insurance Co.*, 52 Hawaii 80, 470 P.2d 521, 526–27 (1970). *See generally*, 6 C. J. Appleman, *Insurance Law & Practice* § 4436 (1979).

In *Carriers Insurance*, we upheld the trial court's holding that the user of a vehicle obtained from a car rental agency was a gratuitous bailee where the user did not pay, nor was he obligated to pay, any rental charge for use of the vehicle.

In *Wells*, a garage owner permitted a customer to use a garage-owned vehicle while the customer's car was being repaired. In that case, even though the customer agreed to pay the garage-owner four cents per mile for use of the vehicle, the court found that the vehicle had not been "rented" within the meaning of a rental exclusion clause in a policy of garage liability insurance. The court in that case held that the agreement to pay four cents per mile for the temporary use of the car was intended to merely cover the cost of operation of the car, and did not represent any "profit" to the garage owner. The court opined that the term "rent" implies a commercial transaction whereby the "owner-renter" receives a "valuable consideration" for the use of his vehicle. The court there went on to say that if the sole motive for permitting another to use one's car is to accommodate another, there is no rental within the ordinary meaning of that term.

Applying these principles to the stipulated facts in the instant case, it is clear to us that Davis-Moore did not "rent" a vehicle to Ms. Kirk. The so-called "Car Rental Agreement" between Davis-Moore and Ms. Kirk was a printed form with blanks to be filled in, and it specifically provided that the "rental rate" was *zero* dollars per day. In addition, the stipulation indicates that Davis-Moore permitted Ms. Kirk the use of its vehicle as an accommodation, Davis-Moore having inconvenienced Ms. Kirk by damaging her vehicle and thus requiring that it be kept in the garage longer than originally anticipated.

The trial court in its memorandum and order also mentioned a provision in the printed form signed by Ms. Kirk to the effect that she understood that Davis-Moore provided no liability insurance on the vehicle given her and that she, Ms. Kirk, had liability insurance on her own vehicle.

In our view, this provision does not resolve our problem and really is of no particular legal significance. National's obligations under its policy with Davis-Moore, vis-a-vis Western's obligations under its policy with Ms. Kirk, cannot be altered by an understanding of this sort between Ms. Kirk and Davis-Moore. *See Carolina Casualty Insurance Co. v. Transport Indemnity Co.*, 488 F.2d 790, 794 (10th Cir. 1973); *Hagans v. Glens Falls Insurance Company*, 465 F.2d 1249, 1252 (10th Cir. 1972).

Judgment reversed and case remanded for further proceedings consonant with the views herein expressed.