Karen A. McVAY, Plaintiff/Appellant,

v.

WESTERN PLAINS SERVICE CORPO-
RATION, Defendant/Appellee.

No. 84–2384.

United States Court of Appeals,
Tenth Circuit.

July 14, 1987.

Jack R. Gage of Hanes, Gage & Burke, P.C., Cheyenne, Wyo., for plaintiff/appellant.

G. Verne Goodsell of Gunderson, Palmer & Goodsell, Rapid City, S.D., and Nick G. Kalokathis of Lathrop & Uchner, P.C., Cheyenne, Wyo., for defendant/appellee.

Before LOGAN, ANDERSON and TACHA, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8(c). The cause is therefore ordered submitted without oral argument.

Karen A. McVay appeals from a summary judgment of dismissal. In the capacity of a judgment creditor she sued Western Plains Service Corporation ("Western") seeking an assignment to her of an alleged property right under a mortgage held by Western. Western acknowledged it was the mortgagee on a certain piece of real property, and that a loan secured by the mortgage was in default. However, it denied ownership of any attachable property right, asserting it was merely acting as a trustee for lending institutions which had loaned money, the repayment of which was secured by the mortgage. The interests of the lending institutions were established by a written Loan Participation Agreement with, and Participation Certificates issued by, Western. On stipulated facts and cross motions for summary judgment, the district court, in a detailed opinion, ruled, *inter alia*, that Western held no more than a bare legal interest in the note and mortgage in question, and that such interest was without value susceptible of attachment. All valuable rights were owned by the lending institutions which funded the loan. We agree and affirm.

## BACKGROUND

This case is presented to us on a narrow, set of facts consisting mostly of the loan and loan participation documents: Loan Participation Agreement, Participation Certificates, note, and mortgage. There is a short stipulation of facts, including the described documents; brief affidavits submitted by Western; and copies of three documents filed in other litigation attached to McVay's motion below. The record as presented establishes the following facts.

On September 10, 1979, Helm Plan I ("Helm"), a real estate development entity, borrowed $600,000 for land acquisition and construction of a townhouse project in Casper, Wyoming. Western originated the loan with Helm and appeared throughout all the loan and security documents as the lender. A written loan commitment between Helm and Western was dated August 22, 1979, and shown to have been accepted by Helm on August 23, 1979. By a signed Loan Participation Agreement ("Agreement"), dated the same day, Western sold the entire loan, on the basis of a one-third participation each, to three savings and loan associations: Aberdeen Federal Savings & Loan Association, Aberdeen, South Dakota; Midwest Federal Savings & Loan Association, Minot, North Dakota; and First Dakota Home Savings & Loan Association, Pierre, South Dakota.[1]

---

1. By virtue of subsequent acquisitions, Aberdeen Federal Savings & Loan Association is now United Federal Savings & Loan Association of Aberdeen, and Midwest Federal Savings & Loan Association is now Midwest Savings Bank of Minot, North Dakota. For convenience, the institutions involved will be referred to collectively as the lenders, lending institutions, or savings and loan associations.

In addition to the Agreement, Participation Certificates were also executed by Western and the savings and loan associations on the same date. The loan was funded and closed on September 10, 1979. On that date Helm signed its promissory note for the $600,000, and secured payment of the note by its mortgage on the acquired property. As stated, the note and mortgage listed Western as payee and mortgagee. All the loan funds were provided by the respective savings and loan associations ($200,000 each), as contemplated by the Agreement.

By virtue of the Agreement Western loaned no money and kept no interest in the loan itself. It received a fee for originating the loan and for servicing the transaction through collection and remittance of principal and interest payments, and other services. The Agreement provided that Western "will continue to hold legal title to such loan as trustee for the owner or owners of the respective participation interests therein." Agreement, par. IV, R. Vol. I at 44. Subsequently, Helm defaulted on its loan, leaving an unpaid principal balance of $300,000, plus interest, and the land was subject to foreclosure pursuant to the mortgage.

McVay, as a judgment creditor of Western, seeks an assignment to her of Western's mortgage interest in the Helm property pursuant to Wyo. Stat. § 1–17–401, which provides:

When a judgment debtor does not have personal or real property sufficient to satisfy the judgment, *any equitable interest he has as* mortgagor, *mortgagee* or otherwise, or any interest he has in any joint stock company, money contract, claim or *chose in action* due or to become due *to him,* or in any judgment or order, or any money, goods or effects which he has in the possession of any person, is subject to the payment of the judgment by action. (emphasis added).

She advances multiple arguments in support of her theory that Western held a valuable equitable property interest under the mortgage:

(a) Western is shown as the lender under all of the documents relating to the transaction and the payee/mortgagee under the note and mortgage; therefore it owns both legal and equitable interests in the note and mortgage. The lending institutions own nothing more than an interest in Western. The Participation Certificates "were like stock certificates and no more represented equitable interest in the mortgage than a share of stock in Ford Motor Company represents an equitable interest in Ford Motor Company's building headquarters in Dearborn, Michigan." Appellant's Opening Brief at 5.

(b) Only the real party in interest can foreclose a mortgage under Wyoming law. Western, as named mortgagee, commenced foreclosure proceedings. This proves, therefore, that Western is the real party in interest, i.e., the equitable owner.

(c) Western is barred by the doctrine of judicial estoppel from denying ownership of an equitable interest because in other cases the savings and loans have resisted personal jurisdiction on grounds that they were "merely shareholders" of Western.

(d) The Loan Participation Agreement does not create a trust under Wyoming law. Therefore, Western cannot be a trustee as claimed.

(e) The district court erred in finding that a resulting trust was established by the sale of Participation Certificates by Western to the savings and loans.

(f) The district court erred in its ruling that McVay failed to join indispensable parties.

Many of those arguments were not raised before the district court. In its "Motion For Summary Judgment and Memorandum in Support Thereof" filed in the district court, McVay made three arguments, in the following order: (1) Judicial Estoppel; (2) Piercing the Corporate Veil; and (3) The Participation Agreement Does Not Satisfy the Requirements to Create a Trust. R.Vol. I at 85–90. However, Western does not object to the new arguments or versions of arguments presented here which were not presented to the district court, and in the interest of laying this

matter to rest we entertain the arguments presented.

There may be more to this case than meets the eye in the record. Additional ongoing litigation is referred to involving these and other parties. McVay's counsel has made unsupported factual assertions and related arguments in his brief to us, and did so in his memorandum to the district court, with respect to the composition and purpose of Western, and motives of the lending institutions. We disregard all such references and arguments. McVay chose to present this matter on a narrow stipulated record from which legal arguments have been fashioned. The district court properly confined itself strictly to the record and questions before it and so do we.

█ In reviewing a grant of summary judgment, this court views the case in the same way that the district court viewed it. *Baker v. Penn Mut. Life Ins. Co.*, 788 F.2d 650, 653 (10th Cir.1986); *Gomez v. American Elec. Power Serv. Corp.*, 726 F.2d 649, 651 (10th Cir.1984); *Western Casualty & Sur. Co. v. National Union Fire Ins. Co.*, 677 F.2d 789, 791 n. 1 (10th Cir.1982). In determining whether any genuine issues of material fact exist, the record must be construed liberally in favor of the party opposing the summary judgment. Fed.R.Civ.P. 56(c); *Franks v. Nimmo*, 796 F.2d 1230, 1235 (10th Cir.1986). However, conclusory allegations will not suffice to establish an issue of fact. *R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.*, 789 F.2d 1469, 1471 (10th Cir.1986).

Jurisdiction in this case is based on diversity of citizenship. The parties appear to agree that Wyoming law governs.

## I.

We reject McVay's argument that Western possessed equitable ownership of the note and mortgage because it was named as the lender/payee/mortgagee. We likewise reject the corollary argument that the participating lenders, by virtue of the participation certificates, had nothing more than a shareholder-type of interest in, or, presumably, a contract action against Western.

█ In general, loan participations are a common and wholesome credit device. They have many purposes, one of which is the accumulation of funds from several lenders for loans not otherwise available to borrowers from a single institution. Lenders benefit by reducing exposure to loss in a single transaction, as well as by additional opportunities for placing funds at interest.[2] In a typical loan participation among banks the lead bank enters into participation agreements with the other banks but acts in relation to the loan and borrower much as Western did in this case. For example, the lead bank will appear as the only party on the note and mortgage. It also generally services the loan, which includes the right to make decisions concerning acceleration, foreclosure, redemption and deficiencies. The agreement usually spells out the liabilities and duties of the parties and commonly designates the lead bank as trustee for the other participants. Duties of the trustee include foreclosure, sometimes with, sometimes without, consent of the participants.[3] Factors which may cause a transaction to be other than a true loan participation include anything that indicates the participants are not subject to the normal risks of ownership, such as guaranteed returns by the lead institution, or required repurchase agreements.

---

**2.** *See* G. Nelson & D. Whitman, *Real Estate Finance Law*, 411–19 (2d ed. 1985); Scholl & Weaver, *Loan Participations: Are They "Securities"?*, 10 Fla.State Univ.L.Rev. 215, 216 (1982). *See generally* Drake & Weems, *Mortgage Loan Participation: The Trustee's Attack*, 52 Am. Bankr.L.J. 23, 23–24 (1978); Kripke & Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements*, 79 Harv.L.Rev. 229, 266 (1965);

MacDonald, *Loan Participations as Enforceable Property Rights in Bankruptcy—A Reply to the Trustee's Attack*, 53 Am.Bankr.L.J. 35, 38–43 (1979); Simpson, *Loan Participations: Pitfalls for Participants*, 31 Bus.Law. 1977, 1978–79 (1976); Stahl, *Loan Participations: Lead Insolvency and Participants' Rights*, 94 Banking L.J. 882, 883 (1977).

**3.** *See generally* authorities cited in note 2 *supra*.

In the case before us the Agreement and Participation Certificates set up a valid participation, free of terms which would make the participation other than as represented by Western. The loan was expressly sold to the lending institutions, which thereafter owned the loan evidenced by the loan documents. The money lent to Helm came from the savings and loans, not Western. All of the risk of loss remained with the lending institutions. Thus, absent some defect in the transaction, the participating lenders, as owners, would possess the entire equitable interest in the note and mortgage associated with the loan.

McVay argues that the Participation Certificates were similar to stock in a corporation, and the savings and loan institutions were no more than stockholders in Western. We disagree. The Participation Certificates lack any of the basic attributes of true stock. *See United States Housing Found., Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 205, 44 L.Ed.2d 621 (1974); *SEC v. Howey Co.,* 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946); *McGovern Plaza Joint Venture v. First of Denver,* 562 F.2d 645, 646–47 (10th Cir. 1977); *Continental Marketing Corp. v. SEC,* 387 F.2d 466, 470 (10th Cir.1967), *cert. denied,* 391 U.S. 905, 88 S.Ct. 1655, 20 L.Ed.2d 419 (1968). *See also Landreth Timber Co. v. Landreth,* 471 U.S. 681, 686–87, 105 S.Ct. 2297, 2302, 85 L.Ed.2d 692 (1984); *Tcherepnin v. Knight,* 389 U.S. 332, 339, 88 S.Ct. 548, 554, 19 L.Ed.2d 564

(1967). The participants were not entitled to receive dividends on their certificates, only specified interest payments. There is no apportionment of profits of a business enterprise, and the participation certificates could not appreciate in value. *Id. See also American Fletcher Mortgage Co. v. United States Steel Credit Corp.,* 635 F.2d 1247, 1254 (7th Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1282, 68 L.Ed.2d 300 (1981).[4]

 A number of courts which have analyzed loan participations under the broader rubric of a security have held that receipt of interest is not directly tied to profitability in such a way as to make loan participations securities. *See, e.g., Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1495 (8th Cir.1984) (profit is usually associated with an investment; it is not merely any return beyond principal); *American Fletcher Mortgage Co. v. United States Steel Credit Corp.,* 635 F.2d 1247, 1254 (7th Cir.1980) (neither repayment of the loan nor the interest rate was dependent on actual profits), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1282, 68 L.Ed.2d 300 (1981); *Union Planters Nat'l Bank v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1184–85 (6th Cir.) (there was no expectation of capital appreciation; the only return expected was repayment plus the interest rate), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981). *See also* Scholl & Weaver, *supra* note 2 at 224.[5]

---

4. A stock is merely a subdivision of a security. Although something can be a security without being a stock, such is not the case here. The participation certificates are neither stocks nor securities. The test under *Forman* requires four elements for a security: "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *Forman,* 421 U.S. at 852, 95 S.Ct. at 2060. That test is not met in this case. *See generally* the discussion in *Union Planters Nat'l Bank v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1181–85 (6th Cir.), *cert. denied,* 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981); *Kansas State Bank v. Citizens Bank,* 737 F.2d 1490, 1494–95 (8th Cir.1984); *FBS Financial v. Cleve-Trust Realty Investors,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,341 at 93,154–93, 160 (N.D.Ohio Dec. 23, 1977) [Available on WESTLAW, DCT database].

5. Legislative intent concerning the enactment of the securities laws indicates that Congress never intended to include commercial bank lending under those laws. *Union Planters,* 651 F.2d at 1182. *See also American Fletcher,* 635 F.2d at 1254; *Lincoln Nat'l Bank v. Herber,* 604 F.2d 1038, 1042 (7th Cir.1979); *Zabriskie v. Lewis,* 507 F.2d 546, 550 (10th Cir.1974).

In its analysis of what constitutes a security, this circuit has focused on the distinction between commercial and investment transactions. Commercial transactions, such as loans, are outside the scope of the security laws. *McGill v. American Land & Exploration Co.,* 776 F.2d 923, 925 (10th Cir.1985). In this case both the loan itself and the participation agreement were for commercial purposes done in commercially recognized and validated ways. The participation agreement was no more an investment than a loan from the savings and loans directly to the

McVay next argues that Western's action to foreclose the mortgage in question proves it was the real party in interest since under Wyoming law only a real party in interest can foreclose. We doubt that Western's foreclosure action would be susceptible to a defense that it is not the real party in interest; but whether or not such a defense exists is irrelevant to this case. Western's action could not and did not change the rights of the parties to the loan participation, and did not act as some sort of an admission against interest with respect to the legal rights created by the loan participation documents.

McVay also contends that the Agreement did not establish a trust relationship between Western and the savings and loans; therefore, presumably, Western's title under the note and mortgage must have been both equitable and legal. McVay further argues that the Agreement would fail as a trust because it violates the rule against perpetuities.

The latter argument fails because the participant's rights in the loan, inclusive of note and mortgage, attached at the time the loan was made and continued thereafter. *See McGinnis v. McGinnis*, 391 P.2d 927 (Wyo.1964). The former argument is entirely unsupported by any Wyoming authority, or any other authority directed to the type of commercial transaction involved here.

In Wyoming, as elsewhere, a trust is characterized by a fiduciary relationship in which one person holds title to property subject to an equitable obligation to keep or use the property for the benefit of another. *See Fuller v. Fuller*, 606 P.2d 306, 308–09 (Wyo.1980); *Scotti's Drive In Restaurants., Inc. v. Mile High-Dart In Corp.*, 526 P.2d 1193, 1196 (Wyo.1974). The Agreement in this transaction consists of fifteen sections. Throughout Western is referred to as a trustee (paras. IV, VIII and IX). Its duties to collect, account for, and remit funds to the lenders are clear

and explicit, as are its obligations to protect and preserve the corpus on behalf of the lenders. The fact that the Agreement reposes in Western independence of judgment and action in the management of its duties in no way detracts from its overriding obligation to act with care on behalf of the lenders and to collect and transmit debt service proceeds to them. In short, the Agreement is explicit on the point that the specified principal and interest, and the note and security therefor, are not owned by Western, but by the lenders. It is beyond dispute that under the Agreement and certificates of participation Western's name on the loan documents as lender, payee and mortgagee gave it nothing more than bare legal title which it was obligated to exercise on the lenders' behalf.

■ In summary, neither Helm, nor Western, nor the savings and loans challenge the respective interests and positions of the parties as asserted by them under the documents in question. It is only McVay, who is a stranger to the transaction, who does so. We hold that the beneficial and equitable interest in the loaned funds, the note, and rights under the mortgage, at all times remained with the lenders. Western at no time held more than bare legal title under the note and mortgage, and it acted in that regard in the position of a fiduciary with respect to the savings and loan institutions.[6]

It is undisputed that a judgment creditor can acquire no greater interest in property than that of the judgment debtor. *In re Estate of Brennan*, 433 P.2d 512 (Wyo. 1967); *In re Bennett's Estate*, 13 Cal.2d 354, 90 P.2d 84, 89 (1939). Since Western held no equitable interest in the note and mortgage, there is nothing for McVay to attach, and her action must fail.

## II.

■ We also reject McVay's judicial estoppel argument. The district court found

---

borrower would have been. The rate of return was set and was not contingent on profitability.

**6.** It is unnecessary to review the district court's alternative finding that this constituted a result-

ing trust. However, that ruling also appears to be correct. *See Nussbacher v. Manderfeld*, 64 Wyo. 55, 186 P.2d 548 (1947); *Dern v. Hitshew*, 44 Wyo. 190, 9 P.2d 467 (1932).

that no representations had been made in other litigation which would support such a theory. That finding is not erroneous. In *Ten Mile Indust. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518 (10th Cir.1987), consolidated with *Hubbell v. Western Plains Serv. Corp.*, 810 F.2d 1518 (10th Cir.1987) and in *Ponderosa Development Corp. v. Bjordahl*, 787 F.2d 533 (10th Cir. 1986), it appears that various savings and loans, some or all of which are the lenders here, have argued lack of personal jurisdiction. The record in this case discloses copies of two affidavits by John P. Clark filed in *Hubbell*. One affidavit was on behalf of Mr. Clark personally and the other on behalf of United Federal Savings & Loan Association, signed by Mr. Clark as its president. Copies of those affidavits were attached to McVay's Motion for Summary Judgment in this case, and considered by the district court. Mr. Clark's affidavit filed on his own behalf is irrelevant to this case. It is not signed on behalf of Western, and cannot bind it, regardless of McVay's assertions outside of the record with respect to Clark's position on the executive committee of Western. The affidavit filed on behalf of United Federal Savings & Loan Association states, *inter alia*, "that the Association is only a stockholder in Western Plains Service Corporation and has had no dealings whatsoever in the day to day business, management and affairs of Western Plains Service Corporation of South Dakota." R. Vol. I at 97. The affidavit also disclaims an interest in "loans referred to in Plaintiff's Complaint," and states that "whatever activities the Association has had in the state of Wyoming have been limited, and in any event, did not arise out of nor did it involve, in any way, the loans and other transactions referred to in Plaintiff's Complaint or the subject matter thereof." *Id.* at 98.

There is simply no factual development in this record in connection with the statements in the Clark affidavit. They appear in a vacuum and are essentially meaningless, despite McVay's expanded factual arguments in her brief. Thus there is simply insufficient record support for McVay's claim of judicial estoppel. Furthermore,

the district court found that "neither defendant nor any of the three loan participants involved in the Helm Plan I loan ever denied that defendant had legal title in this mortgage, and that the loan participants had equitable title in the same." *Id.* at 110–11. McVay does not contest that finding. Nor does McVay contest the district court's finding that an equitable interest in the note and mortgage involved in this case, standing alone, would not establish minimum contacts in Wyoming on the part of the loan participants; therefore, such equitable interest "is not necessarily inconsistent with their assertion [in other proceedings] that the court lacked personal jurisdiction over them in such proceedings. *Hanson v. Denckla*, 357 U.S. 235 [78 S.Ct. 1228, 2 L.Ed.2d 1283] (1958)." *Id.* at 111 On those uncontested rulings, there can be no showing that the savings and loan associations (who are not parties to this suit in any event), or Western, have maintained inconsistent positions in separate judicial proceedings. *Cf. Amfac Mechanical Supply Co. v. Federer*, 645 P.2d 73 (Wyo.1982).

### III.

▮▮▮ Finally, we hold the district court did not abuse its discretion in ruling that McVay failed to join indispensable parties. It is within the district court's discretion to determine indispensability and we will not reverse that decision absent an abuse of discretion. *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1471–73 (10th Cir.1987). The district court correctly found that any judgment in McVay's favor would necessarily affect the interests of the loan participants and Helm in the mortgaged premises. Thus, McVay's complaint was susceptible to dismissal on that ground alone. *See* Fed.R.Civ.P. 19.

### CONCLUSION

We have considered all of McVay's arguments, addressing those we deemed appropriate. The lending institutions, not Western, held the entire equitable interest in the mortgage and note issued by Helm. Since Western possessed no beneficial interest in

the note or mortgage, it had no property rights susceptible of attachment by McVay pursuant to Wyo.Stat. § 1–17–401. This result is dictated by the nature of loan participations and cannot be avoided by general allegations that the certificates are actually securities, or by the other arguments advanced by McVay. The judgment dismissing McVay's complaint with prejudice is affirmed.