Neel, J.
This case arises out of a motor vehicle accident in which plaintiff, Marcella Michaud (Michaud), a passenger in a rental car owned by defendant Clay Auto Rental, Inc. (Clay Auto) and driven by decedent Pierrette Soucy (Soucy), sustained serious personal injuries. Michaud commenced this declaratory judgment action against defendants, United States Fire Insurance Company (U.S. Fire), Liberty Mutual Insurance Company (Liberty Mutual), MIC Property & Casualty Insurance Corp. (MIC), Clay Auto, Clay Chevrolet, Inc. (Clay Chevrolet) and Yves Soucy, Administrator of the Estate of Pierrette Soucy, to determine the scope of six insurance policies and the coverage owed under them as a result of the accident[2] (Counts I, II, IV, V and VI).[3] Michaud also seeks a declaration that Clay Auto breached the rental agreement it had entered with Soucy by failing to provide Soucy with sufficient automobile liability insurance. (Count VII). Finally, Michaud alleges that U.S. Fire committed unfair and deceptive settlement practices in violation of G.L.c. 93A and G.L.c. 176D (Count VIII).
Michaud now moves for partial summary judgment on Counts I, II, IV, V, and VI, and seeks a declaration that Soucy was an insured under the six insurance policies issued by defendants, and that coverage is available to cover Soucy’s purported liability arising from the accident.[4] U.S. Fire and MIC have separately cross-moved for summary judgment on all claims asserted against them in Michaud’s complaint on the grounds that, generally, their respective insurance policies do not provide coverage for Soucy’s alleged liability to Michaud.[5] Liberty Mutual opposes Michaud’s motion in part, conceding that if Liberty Mutual’s policy is adjudged to be the primary insurance policy, then Liberty Mutual would provide up to $200,000 (Canadian) in coverage, and opposing Michaud’s assertion that the same amount is available *62 if the policy is considered an excess policy.[6] Yves Soucy, Administrator of the Estate of Pierrette Soucy supports Michaud’s motion.
BACKGROUND
The following facts are undisputed. Sometime prior to July 2, 1993, Soucy, a Massachusetts resident, purchased a used car from Clay Chevrolet, a Massachusetts car dealership. On July 2, 1993, when Soucy arrived at Clay Chevrolet to pick up the car, Clay Chevrolet informed her that it was not ready. To accommodate Soucy, who was leaving on a driving trip to New Brunswick, Canada, Clay Chevrolet obtained a rental car from Clay Auto, a Massachusetts car rental agency, for Soucy to use for her trip. Clay Chevrolet paid the rental charge. Clay Auto owned the rental car, which was registered in Massachusetts and insured by U.S. Fire.
The rental agreement that Clay Auto and Soucy executed listed Soucy as the “lessee” and Clay Chevrolet as the entity to bill. Michaud, Soucy’s sister and also a Massachusetts resident, was listed as an additional driver. With regard to liability insurance, paragraph 4 of the rental agreement provided in pertinent part:
Lessor shall provide an automobile liability insurance policy for the benefit of the Lessee and authorized drivers with limits equal to the minimum requirements of the Motor Vehicle Financial Responsibility Laws of the state or other jurisdiction in which the accident occurs . . .
Soucy took possession of the vehicle and, soon thereafter, she and Michaud left for New Brunswick. On July 3, 1993, while in New Brunswick, Soucy and Michaud were involved in a motor vehicle accident. Soucy was driving and Michaud was in the passenger seat. While Soucy was attempting to pass another vehicle, her car collided head-on with a vehicle operated by Arthur Theriault. Both Soucy and Theriault were killed. Michaud suffered serious injuries. Michaud commenced a negligence action against Soucy’s estate and this action against defendant insurers.
At the time of the accident, the following insurance policies were in effect.
A. U.S. Fire Insurance Policies
U.S. Fire issued a business auto policy, no. 131 -02-70-30-1, to Clay Auto. The policy was issued in Massachusetts and covers automobiles registered in Massachusetts. This policy is primary and contains the Massachusetts Mandatory endorsement (MM 99 11 09 91), which includes compulsory bodily injury coverage with limits of $20,000 per person and $40,000 per accident. The compulsory bodily injury coverage provides in relevant part: “[U.S. Fire] will pay all sums an insured legally must pay as damages because of‘bodily injury’ caused by a covered ‘auto’ in Massachusetts ‘accidents.’ ” Clay Auto is the only named insured; the policy defines “insured” as “(1) You [Clay Auto], while using a covered ‘auto’ [and] (2) any other person, while using a covered ‘auto’ with your permission.” The policy also defines a “covered auto” as
autos held by the insured for rental on a short term basis (less than tweleve [sic] months) or used in connection with the insured’s business of short term rental of autos, or used for other than rental purposes by the insured or any employee of the insured with the insured’s permission.
The policy expressly states that the coverages under the policy apply only to covered autos as defined under the policy. The compulsory bodily injury coverage excludes coverage for injuries to guest occupants and injuries caused by accidents outside of Massachusetts.
Clay Auto did not purchase optional bodily injury insurance coverage under the primary policy.
U.S. Fire also issued three excess insurance policies to Clay Auto. The first excess policy, no. 138-00-40-74-9,[7] provides coverage for “the difference between the limits stated in [the primary policy] and $100,000 each person, $300,000 each accident bodily injury and $50,000 property damage, owner only.” The second excess policy, no. 138-00-40-75-8, provides coverage for “the difference between the limits stated for [the first excess policy] and $1,000,000 each accident bodily injury and property damage combined limits, owner only.” The third excess policy, no. 138-00-40-76-7, provides coverage for “the difference between the limits stated for [the second excess policy] and $5,000,000 each accident bodily injury and property damage combined single limit, owner only.”[8] The excess policies and the primary policy do not define “owner.” Clay Auto is the only named insured on each of the excess policies. Furthermore, each of the excess policies contains a “Single Interest Endorsement” (RE-9 (Ed. 6/91)) which provides:
This insurance does not apply to the rentee or to any ultimate net loss, claim, occurrence, accident, loss, damages or liability imposed upon such rentee when such ultimate net loss, claim, occurrence, accident, loss, damages or liability arises out of the use, possession, or control, of a covered auto by such rentee.
The excess policies do not define the term “rentee.” The U.S. Fire primary policy, which is identified as “Underlying Insurance” on the Declarations page of each excess policy, defines “rentee” as “any person, firm, or corporation or authorized representative thereof, maintaining or using a covered auto for a charge or fee, however called, with your permission.”
B. MIC Insurance Policy
MIC issued a motor vehicle garage insurance policy, no. MGA 0000087-00, to Clay Auto and Clay Chevrolet, as the named insureds. The policy contains the *63 Mandatory Massachusetts Endorsement, which includes compulsory bodily injury liability with limits of $15,000 per person and $30,000 per accident. The compulsory bodily injury liability coverage provides that:
[MIC] will pay on behalf of the insured, in accordance with the “Massachusetts Compulsory Automobile Liability Security Act,” Chapter 346 of the Acts of 1925 of the Commonwealth of Massachusetts ... all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages to others for bodily injury. . . caused by the ownership, operation, maintenance, control or use of the insured motor vehicle upon the ways of the Commonwealth of Massachusetts or in any place therein to which the public has a right of access.
The policy also defines an insured as “the named insured and also any other person responsible for the operation of an insured motor vehicle with the express or implied consent of the named insured.” The compulsory bodily injury liability coverage excludes coverage for bodily injuries to guest occupants and, as noted above, applies only to injuries caused by . . use of the insured motor vehicle [in] Massachusetts
Clay Chevrolet and Clay Auto also purchased optional insurance under the MIC policy, providing coverage of “Single Limit of Liability ($25,000 minimum) $1,000,000 each accident." The optional bodily injury liability coverage provides that
[MIC] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury... caused by accident and arising out of the hazards described below . . .
The definition of an insured, for purposes of optional bodily injury coverage, is amended by an endorsement entitled Limited Customer Coverage/Garage Policy (MC 25 13 (Ed. 06/82)),[9] and includes the following:[10]
(1) The named insured;
(2) With respect to a motor vehicle to which the insurance applies under Sections (a) and (b) of the Motor Vehicle Hazard, any of the following persons while using such motor vehicle with the permission of the named insured, provided such person’s actual operation or, if he is not operating, his other actual use thereof is within the scope of such permission:
(a) any employee, director or stockholder of the named insured any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner,
(b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess with limits of liability at least equal to (i.) the limits required by the Massachusetts Compulsory Automobile Liability Security Act . . . or (ii) the minimum limits specified by the financial responsibility law of the state in which the motor vehicle is principally garaged, is available to such person. . .
The policy defines two types of hazards, motor vehicle hazard and garage operations hazard. Motor Vehicle Hazard is defined as
(a) The ownership, maintenance or use of any motor vehicle for the purpose of garage operations, (b) the occasional use for other business purposes and the use for non-business purposes of any motor vehicle owned by or in charge of the named insured and used principally in garage operations, and c) the ownership, maintenance or use of any motor vehicle owned by the named insured while furnished for the use of any person.
Garage Operations Hazard is defined as “[t]he ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, herein called ‘garage operations.’ ”
C. Liberty Mutual Policy
Liberty Mutual issued an automobile insurance policy, no. ADI-211-022390-012, to Soucy. The Liberty Mutual Policy provides compulsory insurance with bodily injury liability limits of $ 15,000 per person and $30,000 per accident. The policy states that, under compulsory coverage for bodily injury to others, Liberty Mutual will not pay for injuries to guest occupants or for accidents outside Massachusetts.
Soucy also purchased optional bodily injury coverage which also had limits of liability of $15,000 per person and $30,000 per accident.[11] The Liberty Mutual Policy also contains an “other insurance” provision:
If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner’s auto insurance must pay its limits before we pay. Then, we will pay, up to the limits shown on your Coverage Selections Page, for any damages not covered by that insurance.
DISCUSSION
Summary judgment may be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that no genuine issue of material fact exists on each and every relevant issue “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment may *64 be granted to the party entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. at 422.
A. Choice of Law
This case turns on the proper interpretation of six contracts for insurance. Because the accident occurred outside Massachusetts, a question arises as to which forum’s law, Massachusetts or New Brunswick, should apply. Massachusetts law, in both tort and contract, does not tie itself to any specific choice of law approach, but will seek “a functional choice of law approach that responds to the interests of the parties, the states [or foreign countries] involved and the interstate system as a whole.” Bushkin Associates, Inc. v. Raytheon Co., 353 Mass. 622, 631 (1985) (contract action); see also Cosme v. Whitin Machine Works, Inc., 417 Mass. 643, 646 (1994) (products liability action). The law of the state which has the more significant relationship to the parties and the underlying circumstances will be applied. See Dunfey v. Roger Williams University, 824 F.Supp. 18, 20 (D.Mass. 1993). Factors to be considered in assessing a contractual choice of law issue include (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. Bushkin v. Raytheon Co., 393 Mass. at 632; see also Restatement (Second) of Conflict of Laws, §§6, 188.
Here, each of the six policies was issued in Massachusetts, either to Soucy, a Massachusetts resident, or to Clay Chevrolet or Clay Auto, both Massachusetts businesses, by insurance companies which do business in Massachusetts. The rental car involved in the accident, and covered under the policies, was registered in Massachusetts. Michaud is a Massachusetts resident. While the accident occurred in New Brunswick, Massachusetts has the more significant relationship to the parties and the underlying circumstances. Accordingly, Massachusetts law should govern questions concerning interpretation of, and coverage under, the policies. See W.R. Grace & Co. v. Maryland Casualty Co., 33 Mass.App.Ct. 358, 362 (1992) (New York law applied to govern interpretation of insurance policy negotiated in New York between New York insurer and New York based conglomerate and issued in New York); see also State Farm Mutual Automobile Insurance Co. v. Mendiola, 865 P.2d 909, 911 (Co. App. 1993) (Colorado law applied in interpretation of a motor vehicle policy where insured resided in Colorado, vehicle was registered in Colorado, and policy was issued in Colorado, although motor vehicle accident occurred in New Mexico).
Under Massachusetts law, construing the language of an insurance contract presents a question of law for the court. Assetta v. Safety Insurance Co., 43 Mass.App.Ct. 317, 318 (1997). “Interpretation of an insurance policy is no different from interpretation of any other contracts.” Citation Insurance Company v. Gomez, 426 Mass. 379, 381 (1998). Where there is no ambiguity of the language of the policy, the court will “construe the words of the policy in their usual and ordinary sense." Id. at 381, quoting Hakim v. Massachusetts Insurer’s Insolvency Fund, 424 Mass. 275, 280 (1997). When the policy language is ambiguous, the court will interpret the words in a manner most favorable to the insured. Id.
B. U.S. Fire policies. 1. Primary Policy
U.S. Fire issued a primary motor vehicle policy to Clay Auto under which Soucy is considered an insured and the motor vehicle involved in the accident is a “covered auto.”[12] Michaud asserts that coverage is available under the policy and that the limits of liability are increased from $20,000 to $200,000 in accordance with the New Brunswick financial responsibility law. As support, Michaud argues that because the accident occurred in New Brunswick, the out-of-state coverage extension provision in the policy is triggered. [13] U.S. Fire argues that no coverage is available because Michaud was a guest occupant of the vehicle in an out-of-state accident, and that the policy provides only compulsory coverage which expressly excludes coverage either for bodily injuries to guest occupants or for accidents outside of Massachusetts.
It is undisputed that the primary policy afforded only compulsory bodily injury coverage as required by Massachusetts law, and explicitly excluded ‘guest occupants,’ an exclusion sanctioned by G.L.c. 90, 34A. Milazzo v. Sentry Insurance, 691 F. Supp. 517, 518 (D. Mass. 1987). General laws, 90, §34A excludes three categories of riders from the definition of guest occupants: (1) “persons responsible for operation of the vehicle with the owner’s consent,” (2) “passengers for hire” and (3) “employees.” Michaud argues that she was not a guest occupant because she was listed on the rental agreement as an additional driver, and thus was a person responsible for the operation of the vehicle with Clay Auto’s consent. The Court agrees. When Clay Auto listed Michaud as an additional driver, it gave its explicit consent for Michaud, in addition to Soucy, to be responsible for the operation of the vehicle. Michaud therefore falls within the statutory exclusion to the guest occupant definition, and coverage is not precluded on this ground.
The out-of-state locus of the accident, on the other hand, does provide a basis for denying coverage under the primary policy. The primary policy states that compulsory bodily injury liability coverage is available only for Massachusetts accidents, and expressly excludes accidents outside Massachusetts. Under Massachusetts law, liability for an accident outside of Massachusetts is not covered by compulsory coverage. G.L.c. 90, 34A; Sleeper v. Massachusetts Bonding & Insurance Co., 283 Mass. 511, 512 (1933). Compul *65 sory insurance is prescribed by statute, G.L.c. 90, §34A, G.L.c. 175, §113L. Massachusetts law does not require an owner or operator of a vehicle to have insurance indemnifying against liability for accidents that occur outside Massachusetts. G.L.c. 90, §34A; G.L.c. 175, §113L; see also Sleeper v. Massachusetts Bonding & Insurance Co., 283 Mass. at 512. Accordingly, the primary policy’s compulsory insurance coverage does not extend to Michaud’s accident in New Brunswick.
For coverage under the primary policy to be expanded outside Massachusetts, Clay Auto would have had to purchase optional insurance. “[OJptional insurance expands the scope of the compulsory coverage to persons who would otherwise be excluded because of their status or the locus of the accident.” Hanover Insurance Co. v. Mota, 34 Mass.App.Ct. 928, 929 (1993). The out-of-state coverage provision does not apply because Clay Auto did not purchase optional insurance under the primary policy.
Michaud seeks to avoid the compulsory coverage’s exclusion of the out-of-state accidents by relying on the primary policy’s “insured contract” coverage. Clay Auto’s rental contract with Clay Chevrolet provides that Clay Auto will provide insurance “for the benefit of Lessee and authorized drivers with limits equal to the minimum requirements of the Motor Vehicle Financial Responsibility Laws of the state or other jurisdiction in which the accident occurs.” Rental Agreement, paragraph 4. Michaud argues that the Rental Agreement is an “insured contract” requiring coverage of her claim under the U.S. Fire primary policy.
U.S. Fire argues that such coverage is available only under the optional bodily injury insurance, which Clay Auto did not purchase. Michaud admits, in her opposition to U.S. Fire’s motion for summary judgment, that “(c)overage for ‘insured contracts’ for accidents occurring outside Massachusetts as in the present case, are not within the compulsory coverage.” Michaud’s Opposition, at 2. Whatever insurance Clay Auto agreed to provide under the Rental Agreement, the insurance it purchased from U.S. Fire was Massachusetts compulsory insurance only, and did not include extraterritorial minimum coverage requirements.
Accordingly, as a matter of law, there is no coverage under the primary policy for Soucy’s purported liability to Michaud for injuries she suffered in the New Brunswick accident.
2. U.S. Fire Excess Policies
U.S. Fire also issued three excess liability policies to Clay Auto with total liability limits of five million dollars. The excess policies provide that U.S. Fire will “pay on behalf of the insured in the amount of loss and loss expense which exceeds the amount of loss and loss expense payable by underling [sic] policies described in the declarations .. .” As noted above, on the Declarations page of each excess policy, under “Limit of Liability,” appear the words “owner only." In addition, the excess policies specifically exclude a “rentee” from coverage.
Michaud asserts that coverage is available under the excess policies for Soucy’s purported liabilities. As grounds, Michaud argues (1) that the rentee exclusion does not apply to Soucy; (2) that the excess policies refer back to the primary policy’s definition of insured; and (3) that the latter definition includes Soucy. U.S. Fire argues that Soucy was a rentee and, therefore, is excluded under the excess policies. U.S. Fire also asserts that even if Soucy was not a rentee, the excess policies are expressly limited to “owner only” and thus exclude Soucy from coverage.
The plain import of the rentee exclusion in the excess policies is to avoid coverage for individuals who rent automobiles from the insured. See Lexington Insurance Company v. Reilly, Civ. No. 86-7312 (E.D. PA. Dec. 3, 1987) (1987 WL 26493). The term “rentee” is defined in the primary policy as “any person, firm, or corporation or authorized representative thereof, maintaining or using a covered auto for a charge or fee, however called, with your permission.” Michaud argues that Clay Chevrolet, not Soucy, was the rentee, because it was Clay Chevrolet which rented and paid the fee for the vehicle when it was unable to produce Soucy’s own vehicle on time. Michaud claims that Soucy never intended to rent the vehicle, and that she was merely accommodating Clay Chevrolet when she agreed to use the rental vehicle until Clay Chevrolet completed the work on her own car. U.S. Fire counters that Soucy was the rentee because she signed the rental agreement which labeled her a lessee, and she used the vehicle.
The mere fact that Soucy signed the rental agreement as “lessee” is not dispositive of the issue. Western Casualty & Surety Co. v. National Union Fire Insurance Co., 677 F. 2d 789, 791 (10th Cir. 1982). Further, the rental agreement alone is insufficient to trigger the rentee exclusion. Id.
On the undisputed facts of this case, the Court concludes that Soucy was not a rentee. She paid nothing to Clay Auto, and therefore was not using the vehicle “for a charge or a fee.” Rather, Soucy was accommodating Clay Chevrolet when it failed to have her vehicle ready at the appointed time. Cf. Western Casualty & Surety Co. v. National Union Fire Insurance Co., 677 F. 2d at 792 (one who used vehicle as accommodation to repair shop is not a lessee). Clay Chevrolet was the rentee to the extent that it used the vehicle for a charge or a fee as part of its business in order to oblige Soucy. Accordingly, the rentee exclusion does not apply to Soucy.
Michaud argues that, because Soucy is not a rentee, she qualifies as an insured under the excess policies. Specifically, Michaud argues that the excess *66 policies refer to the primary policy’s definition of insured and that, because Soucy is an insured under the primary policy, she is also an insured under the excess policies. Michaud’s argument ignores, however the “Limit of Liability” in the Declarations page of each excess policy, expressed as the difference between the limits stated in the policy and those of the next preceding policy, “owner only.”
Mindful of the principle that “every word and phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable,” the Court presumes that the term “owner only" has a specific intent and meaning. See Jacobs v. U.S. Fidelity & Guaranty Co., 417 Mass. 75, 77 (1994), quoting Wrobel v. General Accident Fire & Life Assurance Corp., 288 Mass. 206, 209-210 (1934). “An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred over one which leaves terms or provisions useless or inexplicable.” id. at 77, quoting Sherman v. Employer’s Liability Assurance Corp., 343 Mass. 354, 357 (1961).
The Court interprets “owner only” as modifying the expanded limit of liability, i.e. the excess coverage. The manner of modification is also subject to interpretation; the Court interprets “owner only,” in the context of an excess coverage policy, as modifying the class of persons to whom the excess coverage applies. That class of persons is defined in the primary policy as “you” (Clay Auto), and any other person using a covered auto with Clay Auto’s consent. As modified to include “owner only,” i.e. Clay Auto, the definition of an insured, for purposes of excess coverage, excludes others, such as Soucy, using the covered auto with Clay Auto’s consent. Accordingly, the Court rejects Michaud’s argument that Soucy is an insured under the excess policies.
C. MIC Policy
MIC issued a garage operations policy to Clay Auto and Clay Chevrolet as the named insureds. The policy provides both compulsory and optional insurance. As stated above, under the compulsory insurance section, there is no coverage for Soucy’s purported liabilities because the accident occurred in New Brunswick and, under G.L.c. 90, §34A, compulsory coverage applies only to Massachusetts accidents. Sleeper v. Massachusetts Bonding & Insurance Co., 283 Mass. at 512.
Michaud asserts that Soucy is an insured under the optional insurance coverage, and that MIC is required to provide coverage for her liabilities arising from the accident. MIC contends that there is no coverage because Soucy is subject to the “super-escape” clause, contained in the policy’s definition of insured, which absolves MIC from providing coverage if there is other insurance available to Soucy. Because Soucy’s Liberty Mutual policy is available to cover her liabilities, MIC argues that it is not responsible for the loss.
Under the MIC policy’s original optional insurance section, MIC agrees to pay on behalf of the insured any liability arising out of a Motor Vehicle Hazard, which is defined under the policy as:[14]
(a) The ownership, maintenance or use of any motor vehicle for the purpose of garage operations, (b) the occasional use for other business purposes and the use for non-business purposes of any motor vehicle owned by or in charge of the named insured and used principally in garage operations, and c) the ownership, maintenance or use of any motor vehicle owned by the named insured while furnished for the use of any person.
In consideration of a reduced rate of premium for the optional insurance, MIC, Clay Auto and Clay Chevrolet amended the definition of an “insured” with respect to the optional coverage. The amendment is included in an endorsement entitled Limited Customer Coverage/Garage Policy, (MC 25 13 (Ed. 06 82)). Reading the endorsement and the policy language together, an insured under the optional coverage is defined in pertinent part as follows:
(1) The named insured;
(2) With respect to a motor vehicle to which the insurance applies under Sections (a) and (b) of the Motor Vehicle Hazard, any of the following persons while using such motor vehicle with the permission of the named insured, provided such person’s actual operation or, if he is not operating, his other actual use thereof is within the scope of such permission:
(a) any employee, director or stockholder of the named insured any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner,
(b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to (i.) the limits required by the Massachusetts Compulsory Automobile Liability Security Act ... or (ii) the minimum limits specified by the financial responsibility law of the state in which the motor vehicle is principally garaged, is available to such person . . .
MIC appears to argue that, even if the rental car provided to Soucy qualifies as a “motor vehicle to which the insurance applies under sections (a) and (b) of the Motor Vehicle Hazard,”[15] the amended definition of “insured” in Endorsement MC 25 13 quoted above excludes coverage where Soucy has other insurance available, i.e. her Liberty Mutual policy. Such an “other insurance” clause, excluding coverage if there is other insurance, either primary or excess, is known as a “super escape” clause. United States Fidelity & Guaranty Co. v. Hanover Insurance Co., 417 Mass. 651, 655 (1994). Where it applies, the super escape clause has been upheld. Id.
*67 Michaud contends that the super escape clause does not apply here. Specifically, Michaud argues that the clause applies only to Motor Vehicle Hazards (a) and (b), and that because the underlying accident arose out of Motor Vehicle Hazard (c), coverage is available to Soucy.
As noted above, when the parties amended the Part II “Definition of Insured" by Endorsement MC 25 13, they deleted the original paragraph 2 as contained in the policy and replaced it in its entirety with the new paragraph 2 contained in the endorsement. The original paragraph 2(b) included a class of individuals in addition to the named insured who would be an insured for accidents arising out of Motor Vehicle Hazard (c).[16] Under the plain language of the original paragraph 2(b), Soucy would have been included in this class of individuals.
By substituting new paragraph 2, which contains no reference to Motor Vehicle Hazard (c), for the original one, the parties eliminated that class of individuals who would be insured for accidents arising out of Motor Vehicle Hazard (c). Because Soucy is not otherwise a named insured under the MIC policy, she is not covered for purported liabilities under that policy.[17]
D. G.L.c. 93A/G.L.C. 176D
Michaud claims in Count VIII that U.S. Fire violated G.L.c. 93A and G.L.c. 176D when it declined to provide coverage for Soucy’s purported liabilities. Because the Court has concluded that U.S. Fire’s denial of coverage was proper, and because a proper denial of coverage cannot support a claim under c. 93A and c. 176D, see Lumbermans Mutual Casualty Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468-69 (1995), U.S. Fire’s motion as to Count VIII is allowed.
ORDER
For the reasons stated above, plaintiff Marcella Michaud’s Motion for Partial Summary Judgment is DENIED, defendant U.S. Fire Insurance Company’s Motion for Summary Judgement is DENIED as to Count VH, and is otherwise ALLOWED, and defendant MIC Property and Casualty Insurance Company’s Motion for Summary Judgment is ALLOWED.

Michaud has also filed a separate action for negligence against the Estate of Pierrette Soucy. See Michaud v. Estate of Pierrette Soucy, Civ. No. 95-03905 (Middlesex Super. Ct.).

There is no Count III in Michaud's complaint.

Michaud does not move for summary judgment on her breach of contract claim or her G.L.c. 93A/176D claim.

U.S. Fire has also moved for summary judgment as to Count VII, which states a breach of contract claim against Clay Auto only. U.S. Fire not being a defendant to Count VII, its motion as to that count is denied.

following hearing on the summary judgment motions, Liberty Mutual settled with Michaud for $200,000 (Canadian) and moved to dismiss the claim against it pursuant to Mass.R.Civ.P. 41(b)(2). That motion is separately allowed this date.

identified on the declarations page of the policy as “Renewal or Replacement of 138-00-33-83-7,” and referred to by the parties by the latter number. Similarly, the parties refer to the second excess policy, no. 138-00-40-75-8, by the number of the policy it renewed/replaced (138-00-33-84-6), and to the third excess policy, no. 138-00-40-76-7, by the number of the policy it renewed/replaced (138-00-33-85-5).

Michaud and U.S. Fire stipulate that the second and third excess policies (which as noted state limits of “$1,000,000 each accident bodily injury” and “$5,000,000 each accident bodily injury") nevertheless provide excess coverage of “$1,000,000 per person limit” and “$5,000,000 per person limit,” respectively. Plaintiffs Rule 9A(b)(5) Statement, paragraph 8.A, and Defendant, U.S. Fire’s Response.

The endorsement provides that, in consideration for a reduced rate of premium for Part II (optional bodily injury) insurance “(p)aragraph 2 of [Part IPs] ‘Definition of Insured’ is amended to read as follows . . .” (See text infra for new paragraph 2). The original paragraph 2 (under insuring agreement III of Part II) reads:
(2) With respect to the Motor Vehicle Hazard, under coverages B and C:
(a) any person while using with the permission of the named insured a motor vehicle to which the insurance applies under sections (a) and (b) of the Motor Vehicle Hazard, provided such person’s actual operation or (if he is not operating), his actual use thereof is within the scope of such permission
(b) any person while using a motor vehicle to which the insurance applies under section c) of the Motor Vehicle Hazard with the permission of the person or organization to whom such motor vehicle is furnished, provided such person’s actual operation of (if he is not operating) his other actual use thereof is within the scope of such permission
c) any other person or organization but only with respect to his or its liability because of acts or omissions of the named insured or of an insured under paragraph (a) or (b) above.

The categories of insured set forth in paragraphs 3 and 5 of the definition of insured, and the exclusions set forth in paragraph 4, are not pertinent to this case.

As noted above, Liberty Mutual has conceded that if the policy is primary, under the out-of-state coverage provision, the limits of liability are increased to $200,000 (Canadian), and has settled with Michaud for that amount.

An insured is defined in the primary policy for compulsory coverage as "[y]ou [Clay Auto], while using a covered 'auto' [and] (2) [a]ny other person, while using a covered 'auto' with your permission.” There is no dispute either that Soucy was using the motor vehicle with Clay Auto’s permission, or that the motor vehicle involved in the accident was a “covered auto” because it was an automobile held by Clay auto for rental on a short term basis.

The primary policy provides, under Section II “Liability Coverage,” which Clay Auto did not purchase, “Out-of-State Coverage Extensions,” including coverage “to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the ‘covered auto’ is being used."

The policy also provides coverage for an insured whose liabilities arise out of a Garage Operations Hazard. Soucy does not fall within the definition of an insured under a Garage Operations Hazard, nor did the underlying accident arise out of such a hazard. Accordingly, these provisions are not pertinent to the action.

It is at least doubtful whether this is so; indeed, Michaud contends that Motor Vehicle Hazard sections (a) and (b) do not apply because they pertain to “Garage Operations." Michaud's Opposition to MIC’s Motion for Summary Judgment, at 6.

The original Part II “Definition of Insured,” paragraph 2(b), defines as an insured “any person while using a motor vehicle to which the insurance applies under section (c) of the Motor Vehicle Hazard with the permission of the person or organization to whom such motor vehicle is furnished, provided such person’s actual operation ... is within the scope of such permission."

The Court's ruling renders further discussion of the super escape clause unnecessary, particularly as Michaud concedes that Soucy does not come within Motor Vehicle Hazard (a) or (b), to which the super escape clause applies.